Preston SMITH, et al., Plaintiffs–Counter Defendants–Appellees,

v.

Charles JOPLIN, Defendant–Counter Plaintiff–Appellant.

No. 88–1783.

United States Court of Appeals,
Fifth Circuit.

Aug. 8, 1989.

Thomas J. Griffith, Ralph H. Brock, Lubbock, Tex., for plaintiffs-counter defendants-appellees.

Tom S. Milam, Cecil Kuhne, Crenshaw, Dupree–Milam, Lubbock, Tex., for Smith, Adderton, Austin, Taylor, Huffman, Ribble, Robinson and Singleton.

Warren Goss, Boulder, Colo., pro se.

John T. Montford, Lubbock, Tex., for Lewis.

Before KING, GARWOOD and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Charles Joplin, the former President and Chief Executive Officer of the now-defunct Texas Bank & Trust Co., appeals a district court's declaratory judgment finding Joplin's employment contract with the bank's former Board of Directors void and unenforceable under Texas law. We find no error and affirm.

## I.

In August 1986, the Board of Directors ("Directors") of the Texas Bank & Trust Co., hired Charles Joplin as President and Chief Executive Officer of the Texas Bank & Trust Co. ("Bank"). During this period, the state-chartered bank was under supervision by the state Commissioner of Banking and faced failure unless immediate steps were taken to stem losses. The Directors hired Joplin in its final effort to save the bank.

During his August meeting with the Directors, Joplin informed the Directors that he required "assurance of six months compensation." He requested $65,000 for six months, to be placed in escrow with another bank or paid in advance. The Directors discussed Joplin's demands and determined that, under Texas state law, officers could not enter into a contract for a fixed term of employment. See Tex.Rev.Civ.Stat.Ann. art. 342–409. Director E. Warren Goss, however, suggested that the Directors personally guarantee Joplin's $65,000 six-month salary. The Directors agreed to guarantee Joplin's salary and each Director signed Joplin's employment agreement which purported to hire Joplin as president of the bank for six months.

In September 1986, in spite of Joplin's efforts, the bank was declared insolvent and was closed. The Bank paid Joplin his salary for the two months he served as President and C.E.O.—approximately $13,834—but did not pay him the balance of the $65,000 contract. The individual Directors never created the $65,000 escrow account, and also did not pay Joplin the balance due under his contract.

Shortly after the Bank ceased operating, the Directors, both individually and as former members of the Bank's Board of Directors, sought a declaratory judgment in Texas state court that Joplin's employment agreement was void and unenforceable under Texas law. Joplin removed the action to federal district court and counterclaimed, seeking recovery of the balance of the $65,000 contract. The district court rendered judgment in favor of the plaintiff Directors and found that Joplin's employment contract "being for a definite term, is void and unenforceable ..." The district judge also entered judgment in favor of the Directors on Joplin's counter-claim, finding that "[t]here was no employment contract between the plaintiffs as individuals and Joplin." The district court also rejected Joplin's counterclaim against the Directors as guarantors because Joplin's underlying contract with the bank was void.

Joplin concedes that he cannot recover the salary due on his employment contract if the bank is considered his employer because of Tex.Rev.Civ.Stat.Ann. art. 342–409 which provides: "Each officer of the bank shall serve only during the pleasure of the board, and any contract for a fixed term of employment shall be void."

Joplin's appeal narrows to two arguments: (1) the district court erred in concluding that there was no employment contract between the individual Directors and Joplin; and (2) under Texas state law the Directors could lawfully guarantee his sala-

ry. We consider each of these arguments below.

## II.

### A.

Joplin first argues that, based on the plain terms of the contract, he was employed by the individual Directors rather than the Bank; thus, Texas law does not invalidate his contract of employment for a fixed term. The Directors contend that they signed the contract in their official capacities and thus they, as individuals, were not parties to Joplin's employment agreement.

■ The interpretation of a written instrument is ordinarily a question of law unless it is patently ambiguous. We find no such ambiguity in Joplin's written employment contract. The plain words of that contract require that we reject Joplin's argument that he was hired by the Directors individually rather than in their official capacity as Directors of the Bank. The contract provides in part that:

This agreement made this ___ day of August, 1986, between the board of directors of Texas Bank and Trust Co. ..., hereinafter referred to as the "employer," and Charles Joplin of Hobbs, New Mexico, hereinafter referred to as the "employee."
1. The employee is hereby employed as president and chief executive officer of [the bank] ... for the term of six (6) months, commencing on the 13th day of August, 1986, and terminating on the 13th day of February, 1987.

It is plain from this language that the employment contract was between Joplin as employee and the Bank, acting through its board, as employer. The board members, acting in their individual capacities, could not hire Joplin as president and chief executive officer of the Bank.

### B.

Joplin contends next that even if the contract is between himself and the Bank, the board members are nevertheless responsible to him as guarantors of the Bank's obligation. The plain terms of the contract reflect an undertaking by the Directors to guarantee the Bank's obligation to Joplin. Paragraph 5 of the contract provides that Joplin's $65,000 salary would "not be an obligation or debt of Texas Bank and Trust Co." The second provision, which is more pertinent, is contained in paragraph 11, which provides:

In the event bank defaults on payment of the compensation as herein provided, or is incapable of performing for any reason, then each member of the board of Directors of TEXAS BANK AND TRUST CO. shall jointly and severally guarantee the compensation to Employee as provided herein as evidenced by their signatures below.

■ All of the Directors signed Joplin's employment agreement, and individually obligated themselves to guarantee Joplin's $65,000 salary. The minutes of the Board of Directors meeting confirms that the Directors individually intended to guarantee the Bank's obligation to pay Joplin's salary. But, irrespective of the guarantor's intent, it is well-settled that if the underlying debt is unenforceable and the principal debtor has no liability, the guarantor of that debt likewise has no liability. *Hercules Exploration, Inc. v. Halliburton Co.*, 658 S.W. 2d 716 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.) (the guarantor's liability is measured by the principal's liability); *Eastman Oil Well Survey Co., v. Hamil*, 416 S.W.2d 597 (Tex.Civ.App.—Houston 1967, writ ref'd n.r.e.); *Marathon Oil Co. v. Hadley*, 107 S.W.2d 883 (Tex.Civ.App.—Fort Worth 1935, writ dism'd); *Savin Corp. v. Copy Distributing Co., Inc.*, 716 S.W.2d 690 (Tex.App.—Corpus Christi 1986, no writ).

The district court correctly concluded that the directors were not liable as guarantors on a debt that Joplin could not enforce against the principal debtor, the Bank.

We recognize that our conclusion thwarts the clear intent of the Directors to guarantee the Bank's obligation to pay Joplin's salary for six months in the event the Bank was unable to do so. But established

Texas law requires us to reject Joplin's claim against the Directors as guarantors when the underlying principal obligation of the Bank is void. Additionally, to give effect to this manifest intent would violate the public policy of Texas established by article 342–409: Texas requires that a bank, through its board of directors, be able to immediately terminate ineffective, inefficient or dishonest bank officers who are charged with managing banking institutions with enormous fiduciary obligations to the public. Allowing a bank's directors to personally guarantee a bank's employment contract with its officers would give incentives to banks to violate that public policy; directors would have reason not to carry out their obligation to discharge an ineffective officer if that action would render them personally liable for the discharged officer's salary.

Accordingly, the declaratory judgment entered by the district court is

AFFIRMED.