**RESOURCE SAVINGS ASSOCIATION, Appellant,**

v.

**Michael L. NEARY and John H. Lang, II, Appellees.**

**No. 05–88–01442–CV.**

Court of Appeals of Texas, Dallas.

Oct. 10, 1989.

Rehearing Denied Nov. 9, 1989.

that should have been anticipated as a result of the carrying out of the conspiracy."

Steven A. Harr, Carl W. Weinkauf, Dallas, for appellant.

Cynthia Hollingsworth, Stacy R. Obenhaus, Dallas, for appellees.

Before STEWART, THOMAS and WHITTINGTON, JJ.

## OPINION

THOMAS, Justice.

Resource Savings Association appeals from the granting of a final summary judgment in favor of appellees Michael L. Neary and John H. Lang, II. Resource asserts four points of error. We sustain the second point, reverse the trial court's judgment, and remand this cause for further proceedings.

### FACTUAL BACKGROUND

In 1985, Dimension–Lang Georgia Partners, a Texas general partnership, obtained a loan from Resource and executed and delivered to Resource a promissory note in the principal amount of $11,000,000. The note was secured by a deed to secure debt on certain real property in Georgia. Neary and Lang executed an unconditional guaranty securing repayment of the note. The partnership later defaulted and went into bankruptcy. Resource then filed suit in Texas against Neary and Lang based on the guaranty. After Neary and Lang filed a general denial, Resource moved for summary judgment.

Before a hearing on the motion for summary judgment, Resource obtained relief from the automatic stay in the partnership's bankruptcy case and foreclosed on the Georgia property securing the partnership debt. Resource purchased the property at a nonjudicial foreclosure sale for $9,131,924.25, and applied the proceeds as a credit against the debt. A Georgia statute provides that before a party can sue for a deficiency following a foreclosure sale of real property, the party must seek, within thirty days after the sale, a judicial order confirming the sale. *See* GA.CODE ANN. § 44–14–161 (1982). In an apparent effort to preserve all possible remedies, Resource timely initiated a Georgia confirmation proceeding.

Resource later dismissed the Georgia action, electing to proceed only against Neary and Lang in the Texas lawsuit on the guaranty. Neary and Lang filed their own motion for summary judgment, arguing that because Resource failed to comply with the Georgia confirmation statute, Resource could not maintain a deficiency action based on the guaranty. The trial court rendered judgment granting Neary and Lang's motion for summary judgment and denying Resource's motion for summary judgment.

## CHOICE OF LAW

In the second point of error, Resource contends that the trial court erred in granting summary judgment because Texas law controls the action on the guaranty. Both the guaranty and the promissory note contain provisions regarding choice of law. The guaranty states:

This Unconditional Guaranty and all rights, obligations and liabilities arising hereunder shall be construed according to the laws of the State of Texas. The Guarantor agrees that this Unconditional Guaranty is performable in Dallas County, Texas, and waives the right to be sued elsewhere.

The note states:

In the event the enforceability or validity of any provision of this Note or of any document evidencing or securing the indebtedness represented by this Note is challenged or questioned, such provision shall be governed by, and shall be construed in accordance with whichever applicable federal ... or Texas law would uphold or would enforce such challenged or questioned provision; provided, however, that with respect to procedural and substantive matters relating *only* to the creation, perfection and enforcement by the holder of this Note of its rights and remedies *against the property* subject to the Deed to Secure Debt, such matters shall be governed by the laws of the State of Georgia.

(Emphasis added.) Resource argues that this Texas lawsuit is one to enforce legal

remedies against the guarantors, Neary and Lang, and is not one seeking enforcement of Resource's remedies against the Georgia property. Therefore, Resource maintains that Texas law applies and the trial court erred in applying Georgia law.

Neary and Lang contend that if the holder of a note does not obtain confirmation of a foreclosure sale of real property pursuant to the Georgia statute, the debt evidenced by the note is extinguished. They also note that under Texas law, a guarantor's liability is measured by the principal's liability. *See Hercules Exploration, Inc. v. Halliburton Co.*, 658 S.W.2d 716, 724 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). Neary and Lang argue that since the debt was extinguished, they, as guarantors of that debt, have no liability. They further contend that this is true even if Texas law is applied.

There are two problems with Neary and Lang's argument. First, the argument that they have no liability even if Texas law applies must fail for the simple reason that it requires application of some Georgia law. Their allegation that Texas law measures a guarantor's liability by the principal's liability and that they are not liable under Texas law is dependent upon their initial contention that the principal obligation is extinguished under Georgia law.

Secondly, the premise upon which this argument is founded is faulty. The case relied on by Neary and Lang does not say that a debt is extinguished upon failure to obtain confirmation of a Georgia foreclosure sale. *See Gilbert v. Arneson*, 142 Ga.App. 205, 235 S.E.2d 647, 648 (1977). Under Georgia law, the failure to obtain confirmation of a sale does not operate to extinguish any remaining debt. It simply precludes the creditor from instituting suit for a deficiency judgment. *See Worth v. First Nat'l Bank*, 175 Ga.App. 297, 333 S.E.2d 173, 174 (1985); *Turpin v. North Am. Acceptance Corp.*, 119 Ga.App. 212, 166 S.E.2d 588, 592 (1969). Thus, for example, a creditor who fails to confirm a sale may still pursue other contractual se-

curity on the debt. *See Salter v. Bank of Commerce*, 189 Ga. 328, 6 S.E.2d 290, 293 (1939); *Worth*, 333 S.E.2d at 174. Therefore, to the extent that the argument is based on the alleged extinguishment of the debt, their argument fails.

Neary and Lang also contend that Georgia law, not Texas law, should apply to this lawsuit. They note that guarantors are entitled to the protections afforded by the Georgia confirmation statute. *See First Nat'l Bank & Trust Co. v. Kunes*, 230 Ga. 888, 199 S.E.2d 776, 778 (1973). Neary and Lang argue that the full faith and credit clause of the United States Constitution requires Texas courts to give effect to the Georgia statute. *See* U.S. CONST. art. IV, § 1. They note that in certain limited situations, the courts of one state must apply the statutory law of another state. *See Nevada v. Hall*, 440 U.S. 410, 421, 99 S.Ct. 1182, 1188, 59 L.Ed.2d 416 (1979). Neary and Lang also rely on *Bradford Electric Light Co. v. Clapper*, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026 (1932), as authority for the proposition that application of another state's statutory law is warranted where that law provides an affirmative defense that would bar the action.

A careful analysis of the *Clapper* case reveals that appellees' reading of it is too selective. *Clapper* was a workers' compensation case arising from the death of an employee. Both the employer and employee were residents of Vermont. They entered into a contract of employment in Vermont. The employee was injured while on *temporary* assignment in New Hampshire. The Vermont workers' compensation statute provided that employers could agree with workers that the remedies under the statute shall be exclusive as regards injuries received outside Vermont, and that all employment contracts shall be presumed to include such an agreement. The statute also provided that every contract of employment made in Vermont shall be presumed to have been made subject to the statute's provisions absent a written statement to the contrary made by one of the

parties. Acceptance of the act was declared to be "a surrender by the parties ... of their rights to any other method, form or amount of compensation or determination thereof." Neither party in the *Clapper* case filed a statement declining to accept any provision of the Vermont act. *See Clapper*, 286 U.S. at 150–52, 52 S.Ct. at 572–73.

The worker's administratrix sued the employer in a New Hampshire court under the New Hampshire workers' compensation statute. The case was removed to federal court on the basis of diversity of citizenship. The New Hampshire statute differed sharply from the Vermont statute in that it allowed a worker or his representative to elect, after the injury, to sue for damages under the common law. The employer, invoking the full faith and credit clause, defended on the grounds that the action was barred by the Vermont statute, that the employment contract had been entered into in Vermont by residents of Vermont, and that the Vermont statute had been accepted by both parties as a term of the employment contract. The United States Supreme Court stated the main question for decision as "whether the existence of a right of action for Leon Clapper's death should be determined by the laws of Vermont, where both parties to the contract of employment resided and where the contract was made, or by the laws of New Hampshire, where the employee was killed." *See Clapper*, 286 U.S. at 150–53, 52 S.Ct. at 572–73.

Although the Court stated that different considerations apply when a defense is asserted (since a defendant generally cannot choose his forum, whereas a plaintiff may be able to choose among forums in which to seek his remedy), this was certainly not the sole basis upon which the Court's decision was founded. The Court did hold that Vermont law applied, but other factors appear to have been determinative. In answer to the argument that the full faith and credit clause was not applicable because it would give the Vermont statute extraterritorial effect, the Court stated:

The relation between Leon Clapper and the company was created by the law of Vermont; and as long as that relation persisted its incidents were properly subject to regulation there, for both Clapper and the company were at all times residents of Vermont; the company's principal place of business was located there; the contract of employment was made there; and the employee's duties required him to go into New Hampshire only for temporary and specific purposes, in response to orders given him at the Vermont office. The mere recognition by the courts of one state that parties by their conduct have subjected themselves to certain obligations arising under the law of another state is not to be deemed an extraterritorial application of the law of the state creating the obligation.

*See Clapper*, 286 U.S. at 158, 160, 163, 52 S.Ct. at 575, 576, 577.

In our view, *Clapper*, when read in its entirety, is more supportive of Resource's position that Texas law is applicable than of the position that Georgia law applies. The reasons for this conclusion will be set forth in greater detail below.

The purpose of the federal full faith and credit clause is to preserve rights acquired or confirmed under the public acts and judicial proceedings of one state by requiring recognition of their validity in others. However, the very nature of our federal system precludes resort to the Constitution as the means for compelling one state wholly to subordinate its own laws and policy concerning its peculiarly domestic affairs to the laws and policy of other states. *Pink v. A.A.A. Highway Express, Inc.*, 314 U.S. 201, 210, 62 S.Ct. 241, 246–47, 86 L.Ed. 152 (1941). Each state has constitutional authority to make its own laws concerning persons and events within its borders, and the full faith and credit clause does not ordinarily require one state to substitute for its own law the conflicting law of another state, even if that law is controlling in the courts of the other state with respect to the same persons and events. *Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 436–37, 64 S.Ct. 208, 212–13, 88 L.Ed. 149 (1943). Rigid and literal enforcement of the full faith and credit clause, without regard to the law of the forum, would lead to the absurd result that, in all cases of conflicting law, the law of each state must be enforced in the courts of the other state but not in its own courts. *See Pacific Employers Ins. Co. v. Industrial Accident Comm'n*, 306 U.S. 493, 501, 59 S.Ct. 629, 632, 83 L.Ed. 940 (1939). One who challenges the power of one state to enforce its own law in its own courts bears the burden of showing that the conflicting interests of the foreign state are superior to those of the forum state. *See State Farm Mut. Auto. Ins. Co. v. Duel*, 324 U.S. 154, 160, 65 S.Ct. 573, 576, 89 L.Ed. 812 (1945).

Neither party in the instant case has cited any applicable Texas law similar to the Georgia statute invoked by Neary and Lang, nor are we aware of any such law. Therefore, Texas law would not bar this suit for a deficiency judgment, whereas Georgia law would. The law of the two states is obviously in conflict.

With respect to application of the *Clapper* case, Neary and Lang are asserting the law of the foreign state defensively. However, the similarities between *Clapper* and this case end there. Unlike the *Clapper* case, the parties in this case are residents of the *forum* state, they contracted in the *forum* state, and they chose to be governed by the law of the *forum* state *except* "with respect to procedural and substantive matters relating *only* to the creation, perfection and enforcement ... of ... rights and remedies *against the property* subject to the Deed to Secure Debt." (Emphasis added.) We conclude that *Clapper* is readily distinguished from the present case and that it does not support the contention that Georgia law should apply. In fact, the great majority of factors deemed relevant by the Supreme Court in *Clapper* would tend toward application of Texas law in this case.

**901**

Neary and Lang also assert that the Georgia confirmation statute expresses a fundamental public policy of the state of Georgia, relying on *First Nat'l Bank & Trust Co. v. Kunes*, 128 Ga.App. 565, 197 S.E.2d 446, *aff'd*, 230 Ga. 888, 199 S.E.2d 776 (1973). The Georgia court does state that the statute involves public policy, but it does not characterize the policy as fundamental. *See Kunes*, 197 S.E.2d at 447. In any case, even if the statute did express a fundamental public policy of Georgia, that fact would be irrelevant in the context of this case because it has not been shown that the state of Georgia has a materially greater interest than Texas in the determination of the issues involved in this case. *See DeSantis v. Wackenhut Corp.*, 31 Tex. Sup.Ct.J. 616, 618 (July 13, 1988); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971).

When the parties to a contract expressly agree that the contract is to be governed by the law of a particular state, that law will apply if the contract bears a reasonable relationship to the chosen state and no countervailing public policy of the *forum* demands otherwise. *See First Commerce Realty Investors v. K–F Land Co.*, 617 S.W.2d 806, 808–09 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Securities Inv. Co. v. Finance Acceptance Corp.*, 474 S.W.2d 261, 271 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.); *see also DeSantis*, 31 Tex.Sup.Ct.J. at 618. Since this suit on the guaranty was filed in a Texas court, Texas is the forum state. Therefore, by definition, if Texas law applies, it could not possibly be in conflict with any public policy of the forum state. The remaining questions are: (1) what law was chosen by the parties as governing this particular case, and (2) whether the contract bears a reasonable relationship to the state whose law was chosen.

The guaranty, upon which Resource is suing Neary and Lang, states unambiguously that all rights, obligations, and liabilities arising under the guaranty shall be construed according to Texas law. This guaranty was duly executed by Neary and Lang. The promissory note, payment of which was guaranteed by Neary and Lang, states that any questioned or challenged provision of the note or of any document evidencing or securing the indebtedness represented by the note shall be governed by and construed in accordance with whichever applicable federal or Texas law that would uphold or enforce the challenged or questioned provision. The note also contains an exception to the effect that procedural and substantive matters relating *only* to creation, perfection, and enforcement by the holder of its rights and remedies *against the Georgia property* securing the debt shall be governed by Georgia law.

Neither party in this case has pleaded ambiguity with respect to any of the provisions of the note and guaranty. Therefore, the construction of these written instruments is a question of law to be decided by this Court. In doing so, we give effect to the objective intention of the parties as expressed or as is apparent in the writings. *See Westwind Exploration, Inc. v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 381, 382 (Tex.1985). We conclude, based on the terms agreed to by the parties, that they clearly intended that Texas law would govern except in actions seeking enforcement of Resource's rights and remedies against the real property in Georgia.

■ Determination of the law chosen by the parties to govern this case therefore requires determination of the nature of this lawsuit. An action against guarantors of a note for a deficiency following foreclosure on real property is an action involving enforcement of the underlying debt. It is not an action arising out of the real estate foreclosure. *See First Commerce Realty Investors v. K–F Land Co.*, 617 S.W.2d 806, 807, 809 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). In our view, it is beyond question that this lawsuit is an action to enforce Resource's legal remedies against Neary and Lang, the guarantors. We also conclude that this lawsuit is not an

action seeking enforcement of Resource's remedies against the Georgia property. Therefore, the applicable law chosen by the parties is Texas law.

■ The next question is whether the contracts at issue (the guaranty and note) bear a reasonable relationship to the state whose law was chosen, namely Texas. Clearly, the note and guaranty do bear a reasonable relationship to Texas. The partnership that executed and delivered the note was a Texas partnership. Resource, the promisee, is a Texas savings and loan association located in Dallas, Texas. The indebtedness was payable at a Resource office in Dallas. Neary and Lang, the guarantors, are Texas residents. Neary and Lang, in executing the guaranty, agreed that their obligations under the guaranty were performable in Dallas County and waived the right to be sued anywhere but Dallas County. Although the real property securing the debt was in Georgia, the underlying obligations (the note and the guaranty) were clearly related to Texas. Thus, since the parties chose Texas law and since the contracts bear a reasonable relationship to Texas, Texas law is applicable. *See First Commerce Realty Investors*, 617 S.W.2d at 809.

In summary, Neary and Lang's argument that they are not liable even if Texas law applies fails because the argument is dependent upon the application of Georgia law. It also fails to the extent that it is based on the faulty premise that Georgia law would extinguish the remaining debt. The argument that the federal full faith and credit clause requires the application of Georgia law is specious. The case relied on by Neary and Lang in this regard actually supports Resource's argument that Texas law applies. Neary and Lang wholly failed to meet their burden of showing that Georgia has any conflicting interests in this case superior to those of Texas to prevent Texas from applying its own law in its own courts. The parties chose to be bound by Texas law. This lawsuit was filed in Texas, so there is no public policy of the forum

state in conflict with the law chosen by the parties. Since the contracts containing the choice of law provisions bear a reasonable relationship to Texas, the choice of Texas law is an enforceable choice.

The trial court erred in granting appellees' motion for summary judgment, which motion was based on application of Georgia law. Texas law controls this lawsuit. We sustain Resource's second point of error.

### DISPOSITION

■ We must now address an issue regarding proper disposition of this appeal. At oral argument, Neary and Lang contended that Resource would not be entitled to a remand if any one of its first three points of error was sustained because Resource failed to pray for such relief. We agree with their characterization of Resource's prayer for relief on appeal. The prayer clearly asks for rendition in Resource's favor based on its motion for summary judgment. The problem with this prayer is the fact that Resource is not entitled to rendition because Resource has not appealed from the *denial* of its motion for summary judgment; it has appealed only from the *granting* of Neary and Lang's motion for summary judgment. Although Resource asks for rendition based on its motion for summary judgment, there is no point of error with accompanying argument asserting that the trial court erred in denying Resource's motion for summary judgment. *See* TEX.R.APP.P. 74(d) & (f). In short, there is no appeal properly before this Court regarding the trial court's denial of Resource's motion for summary judgment. Therefore, this Court cannot reverse and render based on the denial of Resource's motion. *See Gulf, Colo. & Santa Fe Ry. v. McBride*, 159 Tex. 442, 322 S.W.2d 492, 496 (1958).

The only issue left to be decided is whether Resource is entitled to reversal and remand despite the fact that it did not pray for a remand. Lang and Neary rely upon cases decided by this Court stating that relief not prayed for cannot be grant-

ed. *See Texas Fed. Sav. & Loan Ass'n v. Sealock,* 737 S.W.2d 870, 877 (Tex.App.—Dallas 1987), *rev'd on other grounds,* 755 S.W.2d 69 (Tex.1988); *West End API, Ltd. v. Rothpletz,* 732 S.W.2d 371 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). These cases are inapplicable because this is a summary judgment case. Since Resource is not entitled to rendition in its favor, the proper disposition is reversal of the judgment below and remand of this cause for further proceedings. *See Benser v. Independence Bank,* 735 S.W.2d 566, 570 (Tex.App.—Dallas 1987) (op. on reh'g), *aff'd,* 779 S.W.2d 61 (1988).

Accordingly, we reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.