ACCEPTED
1-14-00521-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/20/2015 9:54:44 AM
CHRISTOPHER PRINE
CLERK

## NO. 1-14-00521-CV

## IN THE COURT OF APPEALS
## FOR THE FIRST JUDICIAL DISTRICT
## HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
1/20/2015 9:54:44 AM
CHRISTOPHER A. PRINE
Clerk

## DAVID LUCYK

### Appellant,

### vs.

## KINDRON HOLDINGS, LLC

### Appellee.

## On Appeal from the 11th District Court
## Of Harris County, Texas
## Trial Court Cause No. 2013-26399

## APPELLANT'S REPLY BRIEF

STRAWN PICKENS, L.L.P.
John R. Strawn, Jr.
State Bar No. 19374100
Andrew L. Pickens
State Bar No. 15971900
711 Louisiana, Suite 1850
Houston, Texas 77002
jstrawn@strawnpickens.com
apickens@strawnpickens.com
Attorneys For Appellant
David Lucyk

## Oral Argument Requested

i

## Identity of Parties and Counsel

Appellant-Defendant David Lucyk ("Lucyk").

John R. Strawn, Jr.
State Bar No. 19374100
Andrew L. Pickens
State Bar No. 15971900
Strawn Pickens, LLP
Pennzoil Place, South Tower
711 Louisiana, Suite 1850
Houston, Texas 77002
713-659-9600
713-659-9601 (fax)
Attorneys for Appellant Lucyk

Appellee-Plaintiff Kindron Holdings, LLC ("Kindron").

Daniel K. Craddock
Craddock Massey LLP
1250 Capital of Texas Hwy., South
Bldg. One, Suite 420
Austin, Texas 78746
Attorneys for Appellee Kindron

**Explanation of References**

Record references to the Clerk's record of August 11, 2014 in this case are made by the abbreviation "CR," followed by the page number(s). Thus, for example, Clerk's record, page 27, would be indicated by "CR 27."

Because they are relevant to this appeal, Appellant has included in the Appendix to his opening Brief the Appellant's Brief, the Appellee's Brief and the Appellant's Reply Brief filed in *Marhaba Partners Limited Partnership v. Kindron Holdings LLC,* No. 14-13-01133-CV, now pending in 14th Court of Appeals, Houston, Texas ("Kindron I"). References to these Kindron I Briefs are made by reference to the appropriate Appendix Tab number and page number for the Brief, *e.g.,* "App. 4, 48."

The Kindron I Appellant's Brief, Kindron I Appellee's Brief and Kindron I Reply Brief, in turn, contain references to the Kindron I Clerk's record of February 3, 2014, and supplemental Kindron I Clerk's record of April 15, 2014. These Clerks' records are now on file in the Fourteenth Court of Appeals, and are a matter of public record. References to the Kindron I Clerk's record and supplemental court record in this Brief are made by the abbreviation "K1-CR" and "K1-Supp. CR," respectively, followed by page number(s), *e.g.,* "K1-CR 411."

# Table of Contents

**Page**

IDENTITY OF PARTIES AND COUNSEL......................................................... ii

EXPLANATION OF REFERENCES............................................................... iii

TABLE OF CONTENTS................................................................................ iv

INDEX OF AUTHORITIES............................................................................ vi

FACTS ........................................................................................................ 1
I.      Kindron wholly fails to rebut the facts controlling this appeal............. 1

ARGUMENT................................................................................................. 3
I.      The undisputed facts show Kindron's actions violate the purpose of Tex. Prop. Code § 51.003. ............................................... 3

II.    Lucyk cannot be liable to pay as a guarantor on a debt that no longer exists under section 51.003 ..................................................... 4
      A.    The borrower Marhaba invoked section 51.003, and the effect of this section is to cancel Marhaba's debt on the Notes. ...................................................................................... 5
      B.    Lucyk, as a guarantor, cannot be liable to pay a principal's debt that no longer exists........................................... 6
      C.    The rule that cancelling the borrower's debt also cancels the guarantor's obligation applies in the case of unconditional guaranties.......................................................... 7
      D.    All the guaranty provisions that Kindron cites depend on the existence of an indebtedness by Marhaba, section 51.003 cancels that indebtedness. ........................................... 8

III.   Kindron's silence on the three factors that courts consider in determining whether to grant a stay show that Lucyk's arguments supporting a stay should prevail. ...................................... 9

IV.   The outcome of this action properly hinges on the outcome of Kindron I. ............................................................................................ 10

CONCLUSION AND PRAYER .................................................................... 12

CERTIFICATE OF COMPLIANCE ...............................................................13

CERTIFICATE OF SERVICE........................................................................13

# Index of Authorities

**Case**                                                                                   **Page**

*BMW Fin'l Servs. LLC v. Rio Grand Valley Motors, Inc.*,
  No. M-11-292, 2012 WL 4623198, at *6 (S.D. Tex. Oct. 1, 2012) ...... 8

*Cox v. Lerman,*
  949 S.W.2d 527 (Tex. App.—Houston [14th Dist.] 1997, no writ) ........ 7

*Gelfert v. National City Bank,*
  313 U.S. 221 (1941) ................................................................................ 3

*Gubitosi v. Buddy Schoellkopf Prods., Inc.*,
  545 S.W.2d 528 (Tex. Civ. App.—Tyler 1976, no writ) ...................... 8

*Hercules Expl., Inc. v. Halliburton Co.*,
  658 S.W.2d 716 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.) 6,7

*Lester v. First Am. Bank,*
  866 S.W.2d 361 (Tex. App.—Waco 1993, writ denied) ...................... 3

*Matey v. Pruitt,*
  510 So.2d 351 (Fla. Dist. Ct. App. 1987) ........................................... 6

*Metze v. Entman,*
  584 S.W.2d 512 (Tex. Civ. App.—Houston [14th Dist.] 1979, no writ). 7

*Resource Sav. Assoc. v. Neary,*
  782 S.W.2d 897 (Tex. App.—Dallas 1989, writ denied) .................... 6

*Smith v. Joplin,* 879 F.2d 159 (5th Cir. 1989) .............................................. 6

Rules
38A C.J.S. Guaranty § 102 ...................................................................... 7
Tex. Prop. Code § 51.003 ......................................... 3,4,5,6,7,8,9,10,11,12

Appellant David Lucyk ("Lucyk") files this Reply to the Brief of Appellee Kindron Holdings LLC ("Kindron"). Lucyk respectfully shows the following:

**Facts**

**I. Kindron wholly fails to rebut the facts controlling this appeal.**

Kindron's 27-page brief never rebuts any of the following facts:

- Kindron's predecessor-in-interest City Bank foreclosed on the Real Property Collateral and purchased it with a "credit bid" of $7,140,000, leaving an alleged deficiency of $1,341,386 on the Notes at issue. App. 4, 6, CR 327, 336.
- In other words, at the time of foreclosure on the Real Property Collateral, the borrower Marhaba Partners Limited Partnership ("Marhaba") owed approximately $8,481,386 on the Notes to City Bank (*i.e.*, the credit bid of $7,140,000 + the alleged deficiency of $1,341,386).
- Information and appraisals contained in Kindron's predecessor's <u>own files</u> show that, at the time of City Bank's foreclosure, the Real Property Collateral had a fair market value of approximately $21,567,120. CR 349 ¶ 16; App. 4, 6-7.
- Hence, the Real Property Collateral that Kindron's predecessor City Bank obtained at the foreclosure sale had a value of about $14.46 million <u>greater</u> than the sales price for the Real Property Collateral at the foreclosure. *See id.* CR 349 ¶ 17.
- Accordingly, should the Fourteenth Court in Kindron I determine that Tex. Prop. Code § 51.003 applies in that case, then Marhaba will receive an offset of $14.46 million against the alleged deficiency of $1,341,386.
- This offset of more than <u>10 times</u> the amount of the $1,341,386 alleged deficiency on the Notes would mean that Marhaba's obligation on the Notes was completely extinguished; no balance or deficiency would exist on the Notes that Lucyk guaranteed.

1

Kindron also does not rebut these facts:

- In addition to being secured by approximately $21,567,120 in Real Property Collateral, Marhaba's $8.481 million debt was secured by $7,441,474 in MUD 402 Receivables. CR 351 ¶ 20; CR 534; App. 4, 7.
- While Kindron's predecessor-in-interest City Bank never attempted to collect the alleged $1,341,386 deficiency by foreclosing on the $7,441,474 in MUD 402 Receivables in addition to the Real Property Collateral, Kindron – after purchasing the Notes from City Bank – purported to non-judicially foreclose on these Receivables, ostensibly to satisfy the alleged $1,341,386 deficiency remaining after City Bank's foreclosure on the Real Property Collateral. CR 68-69; CR307; App. 4, 12.
- In purporting to purchase at foreclosure Marhaba's rights to receive the $7,441,474 in MUD 402 Receivables, City Bank's successor Kindron "credit bid" only $300,000 of the $1,341,386 alleged deficiency owed on the Notes. CR 218, 317; App. 4, 12.
- Hence, as of May 2, 2013 (the date that Kindron filed the action below to collect the alleged $1,341,386 deficiency from guarantor Lucyk), Kindron and its predecessor City Bank had already purported to collect collateral and property worth approximately $29,008,594 (*i.e.,* $21,567,120 + $7,441,474) – all in satisfaction of a total debt of only $8.481 million. CR 5-41.
- Finally – as if these two lenders' collecting approximately 3.4 times the $8.481 million actually owed on the Notes were not enough – in its summary judgment motion below, Kindron asserted the right to collect an additional $1,235,905, CR 73, (*i.e.,* the alleged deficiency of $1,341,386, App. 4, 7, minus Kindron's $300,000 credit bid for the MUD 402 Receivables at the second foreclosure sale, CR 218, 202, plus interest as allegedly provided for in the Notes, CR 202-03) from Lucyk in his capacity as guarantor on the Notes.
- All told, lenders City Bank and its successor-in-interest Kindron purport to have the right to collect assets, properties and/or a judgment against a guarantor worth not less than **$30,244,499**

2

($21,567,120 in Real Property Collateral, CR 346 ¶ 16, plus $7,441,474 in MUD 402 Receivables, CR 351 ¶ 16, 524, plus a $1,235,905 deficiency judgment against the guarantor Lucyk, CR 1134) on a debt of $8,481 million, or <u>just 28% of this amount</u>!

Kindron's scheme in two different courts to collect this windfall is manifestly unfair. It is <u>precisely</u> the type of double recovery (or, more accurately, *triple* recovery) that section 51.003 is intended to prevent.

## Argument

### I. The undisputed facts show Kindron's actions violate the purpose of Tex. Prop. Code § 51.003.

Kindron's brief wholly fails to answer Lucyk's charge that Kindron has violated, not only the purpose, but also the spirit of Tex. Prop. Code § 51.003. This section is intended to prevent lenders from "double-dipping" by collecting – not only the value of the principal, interest and fees owed on a loan – but also on the market value of a foreclosed property far exceeding the amount of any debt. *See Lester v. First Am. Bank,* 866 S.W.2d 361, 367 (Tex. App.—Waco 1993, writ denied) (in enacting provisions like § 51.003, legislatures were safeguarding "'mortgagors from sales which will ... result in mortgagees collecting more than their due.'") (quoting *Gelfert v. National City Bank,* 313 U.S. 221, 231 (1941)).

Unchecked by the appellate courts, Kindron's ruse will defeat this purpose by allowing successive lenders to collect not only Real Property

3

Collateral worth approximately $13.086 million more than the amount actually owed on the Notes at the time of City Bank's foreclosure, but also to collect an additional $7,441,474 in MUD 402 Receivables, as well as a $1,235,905 deficiency judgment. Hence, Kindron's and its predecessor's actions will allow the lenders not only to collect "more than their due" – but to collect *far, far more* than their due.

Kindron's actions should be identified for what they are – a wrongful, two-step attempt to evade section 51.003.

## II. Lucyk cannot be liable to pay as a guarantor on a debt that no longer exists under section 51.003.

Kindron's brief makes a predictable argument. Kindron argues that Lucyk waived the protections of Tex. Prop. Code § 51.003. Kindron Br. at 16. Kindron further argues that Lucyk's waiver is lawful and effective. *Id.* at 17. Hence, Kindron insists, because *Lucyk* "surrendered his right to a fair market value determination and an offset, if … Kindron ... seeks a deficiency judgment on Marhaba's debts … section 51.003 is not applicable to Lucyk." *Id.* at 18.

Kindron misses the point. Lucyk's argument does **not** depend on section 51.003 *being applicable to Lucyk*, as the guarantor, nor upon Lucyk, personally, being able to invoke this section. Rather, Lucyk's argument depends on *Marhaba's* being able to invoke section 51.003, and

4

on section 51.003 *being applicable to Marhaba, as the borrower.* If (as is to be determined by the Fourteenth Court in Kindron I) section 51.003 applies to Marhaba, then the borrower Marhaba's indebtedness on the Notes is extinguished. If the principal Marhaba's indebtedness on the Notes is extinguished, then there can be no obligation on Lucyk, as guarantor, to answer for the principal's non-existent debt.

In other words, because section 51.003 means that the debt has been <u>cancelled</u> as to the borrower Marhaba, Lucyk cannot be liable as a guarantor to pay <u>on a debt that no longer exists.</u>

**A. The borrower Marhaba invoked section 51.003, and the effect of this section is to cancel Marhaba's debt on the Notes.**

Kindron does not (and cannot) dispute that the borrower Marhaba did not waive, but rather expressly invoked, section 51.003 in Kindron I. CR 307; K1-CR 268. Marhaba's invoking section 51.003 eliminates <u>the fact</u> of Marhaba's indebtedness on the Notes by allowing Marhaba to <u>offset</u> (or deduct) from the alleged deficiency the difference between the (a) fair market value of the foreclosed property and (b) its sales price at the foreclosure sale. *See* Tex. Prop. Code § 51.003; Lucyk Br. at 51-52. This difference of about $14.46 million was more than <u>10 times</u> the amount of the claimed $1.341 deficiency on the Notes. CR 349 ¶ 18; 350 ¶ 16; CR

5

351 ¶ 20.  Consequently, the offset to which Marhaba was entitled under section 51.003 <u>cancelled</u> (and would suffice to cancel many times over) the deficiency of approximately $1.341 that Marhaba allegedly owed on the Notes.  *See* Tex. Prop. Code § 51.003; Marhaba Br. 51-52.

**B.     Lucyk, as a guarantor, cannot be liable to pay a principal's debt that no longer exists.**

A guarantor's liability for indebtedness can extend only as far as the borrower's liability.  *See, e.g., Smith v. Joplin,* 879 F.2d 159, 161 (5th Cir. 1989) ("[I]rrespective of the guarantor's intent, it is well settled that if the underlying debt is unenforceable and that the principal debtor has no liability, the guarantor of that debt likewise has no liability.") (applying Texas law) (citing *Hercules Expl., Inc. v. Halliburton Co.*, 658 S.W.2d 716, 724 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.)).  *See also, e.g., Resource Sav. Assoc. v. Neary,* 782 S.W.2d 897, 899 (Tex. App.—Dallas 1989, writ denied) ("under Texas law, a guarantor's liability is measured by the principal's liability.").  If Marhaba, as borrower, owes no indebtedness on the Notes, then there can be no obligation on Lucyk, as guarantor, to pay the borrower Marhaba's indebtedness on the Notes for Marhaba.  *Cf. Matey v. Pruitt,* 510 So.2d 351, 353 (Fla. Dist. Ct. App. 1987) ("Once the primary debt was fulfilled by ... the judgment, Pruitt's obligation as guarantor ceased to exist.").

6

Hence, if Marhaba's underlying debt on the Notes has been extinguished by section 51.003, then Lucyk's obligation to pay that debt (if Marhaba did not) has also been extinguished. *E.g., Metze v. Entman,* 584 S.W.512, 514 (Tex. Civ. App.—Houston [14th Dist.] 1979, no writ) ("It is an accurate statement of the law that that which discharges the principal from his obligation also exonerates the surety" or "guarantor"). In fact, hornbook law commands this result. *See generally* 38A C.J.S. Guaranty § 102 ("[A]s a general rule the payment of other satisfaction or extinguishment of the principal debt or obligation by the principal, or by anyone for him or her, discharges the guarantor ... . If the principal obligation is satisfied in part, the guarantor will be discharged pro tanto, or to that extent.").

**C.    The rule that cancelling the borrower's debt also cancels the guarantor's obligation applies in the case of unconditional guaranties.**

Kindron may seek to confuse this basic rule by noting the law recognizes two different types of guaranty:   a guaranty of collection (conditional guaranty) and a guaranty of payment (or unconditional guaranty).  Kindron Br. at 13 (citing *Cox v. Lerman,* 949 S.W.2d 527, 530 (Tex. App.—Houston [14th Dist.] 1997, no writ)).  Kindron argues that Lucyk "unconditionally guaranteed" Marhaba's payment of the debt – as opposed to making a conditional guaranty.  Kindron Br. at 14.

7

Even if Marhaba were correct on this point, this distinction makes no difference. The rule that a guarantor's liability extends only as far as the principal's liability applies also in the case of unconditional guarantees. *See, e.g., BMW Fin'l Servs. LLC v. Rio Grand Valley Motors, Inc.*, No. M-11-292, 2012 WL 4623198, at *6 (S.D. Tex. Oct. 1, 2012) ("Where a guaranty is <u>unconditional</u> '[t]he guarantor's liability is measured by the principal's liability'") (emphasis added; applying Texas law; citing *Hercules,* 658 S.W.2d at 724); *Gubitosi v. Buddy Schoellkopf Prods., Inc.*, 545 S.W.2d 528, 538 (Tex. Civ. App.—Tyler 1976, no writ) ("since the guaranty agreements are an absolute unconditional guaranty of payment ... the liability of appellant, as guarantor, created by the guaranty agreements is measured by the liability of the principal on the notes.")

**D. All the guaranty provisions that Kindron cites depend on the existence of an indebtedness by Marhaba, section 51.003 cancels that indebtedness.**

Kindron quotes obligations in Lucyk's guaranty document in an effort to escape section 51.003's effect. Kindron Br. at 21-22. But <u>all</u> of these obligations have as their prerequisite <u>the existence of the Indebtedness on the part of Marhaba</u>. *See id.* (quoting CR 146-49, Guaranty ¶ 7 – "Guarantor waives any requirement ... that Bank first enforce any rights against Borrower ... for ... any part of the <u>Guaranteed Indebtedness</u>"; ¶ 8 –

8

"Guarantor agrees that its obligations ... shall not be released ... by ... the partial or total release or discharge of Borrower ... of all or any part of the Guaranteed Indebtedness"; ¶ 9 – "In the event of default in the payment ... of the Guaranteed Indebtedness ... Guarantor shall promptly pay the amount due thereon") (emphasis added).  *See also* Kindron Br. at 11 (quoting CR 151; observing that Guaranty defines the terms "Guaranteed Indebtedness" to mean the indebtedness arising "under the ... promissory notes" from Marhaba to City Bank).

In other words, <u>all</u> the arguments that Kindron makes on Guaranty language depend on there being an <u>extant Indebtedness by the borrower Marhaba on the Notes</u>.  As explained *supra,* Marhaba's invoking section 51.003 means that Indebtedness was <u>cancelled</u>.  That debt ceased to exist. Because all Kindron's arguments on the Guaranty language depend on the continued existence of Marhaba's debt, Kindron's arguments must fail.

III.  **Kindron's silence on the three factors that courts consider in determining whether to grant a stay show that Lucyk's arguments supporting a stay should prevail.**

Kindron's argument on the standard of review for a court's stay of proceedings likewise misses the point.  Lucyk does <u>not</u> contend that an abuse of discretion standard will not apply to a court's decision to stay a

9

case. (On the contrary, Lucyk acknowledges this standard of review. *E.g.,* Lucyk Br. at 54 ("[C]ourts have discretionary authority to stay a case.")).

Rather, Lucyk's point is that the three factors which courts consider in determining to grant a stay (*i.e.,* the competing interests of the parties, the conservation of judicial resources and the potential for mootness, *see* Lucyk Br. at 56-58) all show the Trial Court abused its discretion in failing to stay the action below pending the outcome of Kindron I.

Kindron's brief makes absolutely no attempt to refute Lucyk's showing on each of these three factors. (Especially compelling is Lucyk's point that the Trial Court's failure to stay the proceedings below has the potential to cause a considerable waste of judicial resources.[1]). Kindron's silence on these three factors should be interpreted as a concession that Lucyk's points should prevail, and that the Court below should have issued a stay pending the outcome in Kindron I.

---

[1] If the Fourteenth Court determines that section 51.003 should have been applied in that action, then all grounds for Kindron's pursuing a deficiency judgment against Lucyk in the action below will be eliminated. Hence – if Kindron is permitted by this Court's ruling to execute on the deficiency judgment that the Trial Court entered below against Lucyk personally, but the Fourteenth Court determines in Kindron I that section 51.003 should have been applied in that case – then Lucyk, Kindron, this Court and the Trial Court below will all need to expend time and resources "unscrambling the egg" in order to "undo" a deficiency judgment against an individual which should have never been entered or collected in the first place. This task will be complicated, expensive and time-intensive, and will require significant amounts of court resources.

The better course would be simply to stay the judgment below pending the outcome in Kindron I.

10

**IV. The outcome of this action properly hinges on the outcome of Kindron I.**

Kindron's argument that its purported "declaratory judgment" action against Marhaba in Kindron I and its breach of guaranty action against Lucyk below in Kindron II "are not interdependent," Kindron Br. at 24, lacks merit. If the Fourteenth Court determines that section 51.003 applied in Kindron I, then the alleged $1,341,386 million deficiency that Kindron sought to collect from the MUD 402 Receivables in Kindron I will be eliminated as a matter of law. This result means that the guarantor Lucyk's obligation to pay that deficiency will also be eliminated.

The Fourteenth Court's decision in Kindron I thus has the potential to show that the Trial Court below erred in granting summary judgment against Lucyk as the guarantor on the Notes. This is because the effect of section 51.003 will be to cancel the debt of borrower Marhaba, such that Lucyk as guarantor can no longer be liable to pay on a debt which no longer exists. The action below and Kindron I are emphatically interrelated because the result in Kindron I may show that the Trial Court erred in entering the summary judgment below.

Stated another way, Kindron I and the action below are not "separate and independent," nor "not dependent" as Kindron argues. *See* Kindron Br. at 20, 23. The result on appeal in Kindron I is implicitly at issue here,

11

because the Fourteenth Court's determination that section 51.003 cancels the borrower Marhaba's indebtedness on the Notes will also eliminate any basis that Kindron had in the court below to proceed against Lucyk as the guarantor on the indebtedness on those Notes in the first instance.

**Conclusion and Prayer**

Defendant Lucyk respectfully requests this Court reverse the Trial Court Order granting Plaintiff's Motion for Summary Judgment. Alternatively, Lucyk requests that the Court stay any efforts to execute upon or collect on the summary judgment entered below pending the outcome of the appellate process in Kindron I. Lucyk respectfully requests all other appropriate relief.

Respectfully submitted,

STRAWN PICKENS L.L.P.

By: /s/ Andrew L. Pickens
John R. Strawn, Jr., #19374100
Andrew L. Pickens, #15971900
Pennzoil Place, South Tower
711 Louisiana, Suite 1850
Houston, Texas 77002
(713) 659-9600
(713) 659-9601 Fax
jstrawn@strawnpickens.com
apickens@strawnpickens.com
ATTORNEYS FOR APPELLEES

12

## Certificate of Compliance

I certify that this document brief/petition was prepared with Microsoft Word 2012, and that, according to that program's word-count function, the sections covered by TRAP 9.4(i)(1) contain 3,726 words.

/s/ Andrew L. Pickens
Andrew L. Pickens

## Certificate of Service

I, Andrew L. Pickens, hereby certify that a true and correct copy of the foregoing instrument has been provided to all counsel of record in accordance with the applicable Texas Rules of Appellate Procedure on this 20th day of January 2015.

Daniel K. Craddock
Craddock Massey LLP
1250 Capital of Texas Hwy., South
Bldg. One, Suite 420
Austin, Texas 78746

/s/ Andrew L. Pickens
Andrew L. Pickens