**HERCULES EXPLORATION, INC.,
Andrew Weaver & Thomas A.
Myers, Appellants,**

v.

**HALLIBURTON COMPANY, Appellee.**

No. 13–82–214–CV.

Court of Appeals of Texas,
Corpus Christi.

Sept. 1, 1983.

Rehearing Denied Oct. 6, 1983.

John T. Dailey, Strickland & Dailey, Patrick V. Strong, San Antonio, for appellants.

Todd Hunter, Kleberg, Dyer, Redford & Weil, Corpus Christi, for appellee.

Before BISSETT, UTTER and GONZALEZ, JJ.

## OPINION

BISSETT, Justice.

This is an appeal from a judgment rendered in a suit on sworn account, wherein Halliburton Company was plaintiff and Hercules Exploration, Inc., Andrew Weaver and Thomas A. Myers were defendants. Following a jury trial, judgment was rendered that plaintiff recover from defendants, jointly and severally, the sum of "$32,001.27, with interest thereon as to Hercules Exploration, Inc. at the rate of 6% per annum from October 25, 1976 until date of judgment and thereafter at the rate of 9% per annum, together with reasonable attorney's fees as to Hercules Exploration, Inc. in the sum of $6,288.75, with interest thereon at the rate of 9% per annum from date of judgment until paid, together with all costs of court in this behalf expended."

All of the defendants have appealed. The defendants in their first, second, third and fourth points of error, attack the judgment on the ground that plaintiff's suit was barred under the provisions of Tex.Rev.Civ. Stat.Ann. art. 5526 (1958), the two-year statute of limitations. Plaintiff argues that the suit was not barred by that statute, and that Tex.Rev.Civ.Stat.Ann. art. 5527 (Supp. 1982–83), the four-year statute of limitations, is applicable.

Halliburton, in its duly verified original petition, its trial pleading, alleged that it, at the request of Hercules, provided the latter with "certain goods, wares, services and merchandise or rendered personal services for labor done or material furnished." In the alternative, it was alleged that its suit was based upon "labor performed and material furnished on the theory of quasi contract or quantum merit." It was further alleged that the suit was founded on an "oral or written contract." Attached to the petition and incorporated therein were invoices and work tickets describing the materials and services furnished and the labor performed. The invoices are dated August 20, 1976 and August 24, 1976. Such materials, services, and labor were furnished and rendered in connection with a "Kiel Frac," of Hamilton No. 1 well, in Dimmit County, Texas. The liability of Weaver and Myers was claimed under a certain "Letter of Guaranty," signed by them on March 11, 1976, addressed to Halliburton, wherein they guaranteed payment of Hercules' accounts up to $50,000.00. Suit was filed on October 23, 1979.

Articles 5526 and 5527 were both amended by Acts of the 66th Legislature. Such amendments became effective on August 27, 1979.

Prior to amendment, Article 5526, in pertinent part, provided:

"There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

*       *       *       *       *       *

4. Actions for debt where the indebtedness is not evidenced by a contract in writing.

5. Actions upon stated or open accounts other than such mutual and current amounts as concern the trade of merchandise between merchant and merchant, their factors or agents ... and limitation shall run against each item from the date of such delivery, unless otherwise specially contracted."

The amendment to Article 5526 deleted Sections 4 and 5 of the statute as the same existed prior to August 27, 1979, and provided for a two-year limitations within which to file suits in six (6) separate situations, none of which are applicable to the case at bar. The effect of the amendment was to abolish the two-year statute of limitations within which to bring suit "for actions for debt where the indebtedness is not evidenced by a contract in writing," and where the action was upon "stated or open accounts."

Prior to amendment of Article 5527, the statute, in pertinent part, provided:

"There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

1. Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing."

\* \* \* \* \* \*

As amended, article 5527, in pertinent part, reads:

"There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

1. Actions for debt."

\* \* \* \* \* \*

Hercules, Weaver and Myers argue that the invoices and work tickets do not, in fact, constitute contracts in writing, because they do not set out specifically the obligations of the parties, and that the obligation of Hercules to pay for the items set out therein rests, at least in part, upon parol evidence, and that they reveal "only a listing of services" alleged to have been provided by Halliburton and charged to Hercules. It is further contended that Halliburton, by pleading that its suit is "founded on an oral or written contract," has judicially admitted that "such suit is not wholly based upon a contract in writing. It is also argued that the invoices and work tickets were not introduced in evidence for "all purposes," but were introduced for the limited purpose of showing that certain charges were made to Hercules by Halliburton, and that in order to prevail, Halliburton, of necessity, had to rely on parol evidence to establish any liability for the charges reflected in the invoices. They insist that the cause of action is barred by Article 5526.

Halliburton argues that Article 5527, the four-year statute of limitations, before and after its amendment, controls. Consequently, it says that since it is conclusively shown that suit was filed within four years from the date its cause of action accrued that it was not barred by any statute of limitation. It first asserts that as a result of the 1979 amendments, Sections 4 and 5 of Article 5526 were eliminated, and Article 5527, insofar as this appeal is concerned, was amended to cover only "actions for debt," which amendments "showed the concern of the legislature to apply the four-year limitations to actions for debt and actions founded upon writings." Next, Halliburton contends that "the invoices, delivery tickets and letter of guaranty represent a contract in writing and action for debt." It further contends that the amendments, from and after August 27, 1979, "placed all actions for debt under the four-year statute." Finally, it is argued that the invoices, delivery or work tickets, and the letter of guaranty, all of which were attached to and made a part of Halliburton's petition and were introduced in evidence at the trial, are sufficient to show that Hercules' became obligated to pay for the services and materials furnished and labor performed, and that the letter of guaranty was sufficient to hold Weaver and Myers liable for payment of Hercules' debt.

■ Under the express terms of both Article 5526 and 5527, limitations begins to run when the cause of action accrues; by "cause of action" is meant the right to institute suit. *Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 144 Tex. 475, 191 S.W.2d 716, 721 (1946); *Port Arthur Rice Milling Co. v. Beaumont Rice Mills,* 105 Tex. 514, 143 S.W. 926 (1912); *Jones County v. Moore,* 4 S.W.2d 289 (Tex.Civ.App.— Eastland 1928, writ ref'd).

■ A judicial admission is a formal act, done in the course of judicial proceedings, which dispenses with the production of evidence and takes the matter out of the domain of proof. It is not evidence, but is a substitute for evidence. *First National Bank in Dallas v. Kinabrew,* 589 S.W.2d 137 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r. e.); *Valdes v. Moore;* 476 S.W.2d 936 (Tex. Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.).

The leading case on the subject is *United States Fidelity & Guaranty Co. v. Carr,* 242 S.W.2d 224 (Tex.Civ.App.—San Antonio 1951, writ ref'd). It sets out five requirements of a judicial admission. They are: the admission was: 1) made in the course of a judicial proceeding; 2) contrary to an essential fact for the party's recovery; 3) deliberate, clear and unequivocal; 4) related to a fact upon which judgment for the opposing party could be based; and 5) enforcing the admission would be consistent with public policy."

Unless the statements asserted to be a judicial admission meet all of the requirements set out in *United States Fidelity & Guaranty Co. v. Carr,* supra, it is not a judicial admission. *Mendoza v. Fidelity & Guaranty Insurance Underwriters, Inc.,* 606 S.W.2d 692 (Tex.1980). The allegation that "this suit is founded on an oral or a written contract" does not meet all of such requirements. It does not constitute a judicial admission that the suit is not wholly based upon a contract, as argued by Hercules, Weaver and Myers. It is not a deliberate, clear and unequivocal statement of a fact, but is nothing more than a conclusion based on the facts alleged in the petition and the exhibits which were incorporated therein.

In the case of *International Printing Pressmen and Assistant's Union of North America v. Smith,* 145 Tex. 399, 198 S.W.2d 729 (1946), the Supreme Court of Texas had before it the question of whether plaintiff's cause of action was a tort action and, consequently barred by limitations under Article 5526, or whether the suit was founded upon a contract in writing within the meaning of Article 5527. In holding that the suit was founded upon a contract in writing, and was not barred by the two-year statute of limitations since suit was filed more than two years but less than four years after the cause of action accrued, the Court, on page 736, of the published opinion, said:

"However, it is not indispensable that the written instrument relied upon contain an express promise to do the things for the nonperformance of which the action is brought. It is sufficient if the obliga-

tion or liability grows out of a written instrument, not remotely but immediately, or if the written instrument acknowledges a state of facts from which, by fair implication, the obligation or liability arises. And while parol evidence is not admissible to establish the promise, it is admissible to show performance on the part of the plaintiff and a breach on the part of the defendant."

The Court further quoted with approval the following statements found in *Reyburn v. Casey,* 29 Mo. 129:

"The broad and comprehensive language of the statute evidently embraces all kinds of written instruments, without regard to their mere form or phraseology, which imply a promise or agreement to pay money, and is not restricted to such as have the requisites of promissory notes, or to such instruments as contain an express promise or agreement upon their face to pay. It is sufficient if the words import a promise or agreement, or that this can be inferred from the terms employed."

The Court, on page 737 of the published opinion, also quoted with approval the following statements found in *Bracklein v. Realty Insurance Co.,* 95 Utah 490, 80 P.2d 471, 476:

"... [i]f the fact of liability arises or is assumed or imposed from the instrument itself, or its recitals, the liability is founded upon an instrument in writing. If the instrument acknowledges or states a fact from which the law implies an obligation to pay, such obligation is founded upon a written instrument within the statute. If the writing upon its face shows a liability to pay, such liability is on a written instrument within the statute of limitations."

\* \* \* \* \* \*

"An obligation being established by a writing, a promise to pay or to perform is implied. By necessary inference of law and fact such promise is embodied in the language of the writing although it may not be expressed in words."

The Court, in *Texas Pacific Coal & Oil Co. v. Stuard,* 7 S.W.2d 878, 882 (Tex.Civ. App.—Eastland 1928, writ ref'd), held that an implied covenant in an oil and gas lease to develop the leased premises after production was obtained was part of the written contract and a suit thereon for development was governed by the four-year statute of limitations.

■ It is well established case law in Texas that contracts in writing should be liberally construed, and a strict construction should not be used in determining what does and does not constitute a contract in writing. *Kiel v. City of Houston,* 558 S.W.2d 69 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.); *Jackson v. Paulsel Lumber Co.,* 461 S.W.2d 161 (Tex. Civ.App.—Fort Worth 1970, writ ref'd n.r. e.); *First State Bank of Green's Bayou v. Tanner,* 495 S.W.2d 267 (Tex.Civ.App.— Houston [1st Dist.] 1973, no writ).

■ The contention that there could be no contract in writing because the invoices and work tickets were not signed by an authorized representative of Hercules has no merit. It has been held that a writing, in order to constitute a contract in writing within the meaning of the four-year statute of limitations, does not necessarily have to be signed by both parties to the contract. *Republic Supply Co. v. Waggoner,* 283 S.W. 537 (Tex.Civ.App.—Amarillo 1926, writ ref'd); *Jackson v. Paulsel Lumber Co.,* supra. See, also, *Ferguson v. Parker,* 176 S.W.2d 768 (Tex.Civ.App.—Dallas 1943, writ ref'd w.o.m.).

We hold that Halliburton's suit was not barred by Article 5526, the two-year statute of limitations. The written invoices and work or delivery tickets, together with the letter of guaranty, constitute "a contract in writing." Suit was filed within four years from the date Halliburton's cause of action accrued. The first, second, third and fourth points of error are overruled.

■ In the ninth point of error, Hercules, Weaver and Myers contend that it was error to admit into evidence for any purposes Halliburton's Exhibits 3 and 4 because the

"proof relating to the admission of same did not meet the requirements of Article 3737e, Texas Revised Civil Statutes, Business Records Act."

Tex.Rev.Civ.Stat.Ann. art. 3737e (Vernon's Supp.1982–83), in pertinent part, reads:

"Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

(a) It was made in the regular course of business;

(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter.

Sec. 2. The identity and mode of preparation of the memorandum or record in accordance with the provisions of paragraph one (1) may be proved by the testimony of the entrant, custodian or other qualified witness even though he may not have personal knowledge as to the various items or contents of such memorandum or record. Such lack of personal knowledge may be shown to affect the weight and credibility of the memorandum or record but shall not affect its admissibility."

Exhibits 3 and 4 consisted of invoices and work (delivery) tickets relating to the "Kiel Frac" of the Hamilton No. 1 well. The basis of their being offered into evidence was the testimony of the witness O.D. Ilseng, who was credit manager of the Corpus Christi Division of Halliburton at the time the well was fraced. He did not personally supervise the persons who prepared them, nor did he personally supervise the persons who actually furnished the materials and services described therein. He did, however, explain in great detail the proce-

dures established by Halliburton for the bookkeeping and billing of accounts. He further testified that he was familiar with such procedures and that they were followed in this instance. In particular, he testified that 1) it was Halliburton's regular course of business for its employees or representatives, who had personal knowledge of the particular work, to make invoices and delivery tickets concerning the same; 2) all invoices, work tickets and delivery tickets, including Exhibits 3 and 4, were made by the employees and representatives of Halliburton who had personal knowledge of the contents contained therein; 3) Exhibits 3 and 4 were made in the regular course of business; 4) he was the custodian of Exhibits 3 and 4 on the dates that they were made, and that they were made at the time such materials and services were furnished, or near the time thereafter.

The identity and mode of preparation of the invoices and delivery tickets (Exhibits 3 and 4) were proved by the witness Ilseng, even though he did not have any personal knowledge concerning the several items contained in those documents. The witness was a qualified witness within the meaning and intent of Article 3737e, and his testimony supports the implied finding by the trial judge that the invoices and delivery tickets were made in the regular course of business, and were made at the time such materials and services described therein were furnished; the testimony of Ilseng also supports an implied finding that it was in the regular course of Halliburton's business for one of its employees or representatives who had personal knowledge of the transactions to make a memorandum, or record, thereof; Ilseng's testimony also supports an implied finding that it was the regular course of Halliburton's business for an employee thereof having personal knowledge that Hercules had ordered the "Kiel Frac" to transmit that information to other employees of Halliburton for accomplishment, and thence to still other employees to be included in the invoices. *University Savings & Loan Ass'n. v. Security Lumber Co.*, 423 S.W.2d 287, 291 (Tex.1967). The invoices were admissible in evidence, and under Article 3737e the entries therein are competent evidence to show that Hercules ordered the materials, services and labor from Halliburton in connection with the fracing of Hamilton No. 1 Well, and that Halliburton furnished the same pursuant to such order. Any question regarding Ilseng's personal knowledge as to any of the items set out in the invoices and delivery tickets go to the weight and credibility of the documents, not to their admissibility into evidence. The ninth point of error is overruled.

Hercules, Weaver and Myers, in their fifth, sixth, seventh and eighth points of error, attack the judgment on the ground that there is "no evidence" or "insufficient evidence" to support the submission of any issue to the jury because Halliburton "failed to sustain its burden of proof required on a suit on an account." They prayed that this Court "reverse the judgment of the trial court and render in their favor." We treat the points as "no evidence" points and apply the "no evidence" standard of review. *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773 (Tex.1974); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

The jury was instructed by the trial judge that Halliburton's Exhibits 3 and 4 "were admitted into evidence for the limited purpose of showing what was billed," and that such exhibits were to be considered "only for the purpose for which they were admitted into evidence and for no other." The jury found: 1) Halliburton provided goods and services to Hercules "after August 19, 1976 on the Hamilton No. 1 well"; 2) Hercules became obligated to pay Halliburton "for the goods and services provided"; 3) Hercules is presently indebted to Halliburton "for the goods and services provided"; and 4) Hercules owed Halliburton $32,001.27 "for the goods and services provided."

Hercules, Weaver and Myers argue that there is no evidence that the goods and services were provided by Halliburton; that there is no evidence as to whether any of such services were necessary to perform the fracing operation on Hamilton No. 1 well; and that there is no evidence as to whether

the prices charged for such services were reasonable. We do not agree.

Hercules, Weaver and Myers filed a verified denial to Halliburton's verified petition in sworn account. Therefore, the force of the sworn account as being prima facie true was destroyed, and Halliburton had the burden to prove every item of the account by competent evidence.

Case law dictates that the essential elements of such proof are generally 1) the sale and delivery of the merchandise or performance of the services and 2) that the amount of such account is just and that the prices charged are in accordance with an express agreement or, in the absence of such express agreement, that they are usual, customary or reasonable. *Opryshek v. McKesson & Robbins, Inc.,* 367 S.W.2d 357 (Tex.Civ.App.—Dallas 1963, no writ); *Marr v. Craddock,* 406 S.W.2d 278 (Tex.Civ.App.—Tyler 1966, no writ); *Parker v. Center Grocery Company,* 387 S.W.2d 903 (Tex.Civ. App.—Tyler, 1965, no writ); *Brooks v. Eaton, Yale & Towne, Inc.,* 474 S.W.2d 321 (Tex.Civ.App.—Waco 1971, no writ); *Blue Bell, Inc. v. Isbell,* 545 S.W.2d 563 (Tex.Civ. App.—El Paso 1976, no writ).

Applying the standard of review to the "no evidence" points, we review the evidence in its most favorable light in support of the jury findings consider only the evidence which supports such findings, and reject all evidence and inferences contrary to such findings. The witness Ilseng, Halliburton's credit manager for its Corpus Christi Division for many year, testified:

"Q All right. Can you explain what Halliburton provided the defendants?

A We provided services and materials for them."

He further testified that he, in his capacity as credit manager, contacted Mr. Joe Nance, the Secretary-Treasurer of Hercules, and that Nance told him that the subject well "was Hercules' and charges should be made to Hercules," and that the invoices "would be paid" by Hercules as soon as the latter received certain "funds." Ilseng also

said that the amounts of money for the charges made to Hercules had not been paid as of the date of trial, and that the unpaid bills were the amounts which were set out in the invoices, Halliburton's Exhibits 3 and 4.

Ilseng further testified that he contacted defendant Weaver, Vice-President of Hercules, "in regard to both of these bills." He (Ilseng) said that Weaver told him that Hercules "didn't have the funds at that time, they were anticipating receiving monies that would pay it."

Defendant Myers testified:

"Q You understand that this lawsuit happens to involve goods and services, is that correct, that have been provided by Halliburton?

A Yes, sir, that is correct."

\*    \*    \*    \*    \*    \*

"Q Can you explain to me the type of services and goods that were provided, that you understand that Halliburton provided in this matter?

A Just normal frac job."

He further testified that he was President of Hercules when "these services and goods from Halliburton were provided," and that he was still President at the time of trial. When questioned as to whether the "fracing expense" which was shown on Hercules' 1976 corporate income tax return as a deduction against income included the fracing of the Hamilton well, he answered:

"For the J.R. Hamilton and other wells."

Mr. Newton Lale, a petroleum engineer and division sales manager for Halliburton for many years, testified that he was familiar with the goods, material and services with respect to fracing operations and with the reasonable prices charged therefor in the area where the Hamilton well was located. After reviewing Halliburton's Exhibits 3 and 4, he testified that the goods and services shown thereon were necessary in fracing operations and that the charges therefor were reasonable and necessary, based on his knowledge in regard to fracing requirements and procedures and to the

pricing for the necessary and required goods and services.

We hold that there was ample evidence of probative value to support the jury findings complained of, and that the trial court did not err in submitting those issues to the jury. The fifth, sixth, seventh and eighth points of error are overruled.

In the tenth and eleventh points of error, complaint is made, first, that it was reversible error for the trial court to render judgment against the defendants Weaver and Myers because no issues were submitted to the jury inquiring into any such liability, and, second, that by failing to request the submission of such issues relating to the individual liabilities of Weaver and Myers that Halliburton waived any right of recovery it might have had against them. The points cannot be sustained.

The "Letter of Guaranty," Halliburton's Exhibit 2, was introduced into evidence. It was addressed to Halliburton, and was signed by the defendants Weaver and Myers on March 11, 1976. The letter, in pertinent part, reads:

"Gentlemen:

It is the desire of the undersigned that an open line of credit be extended to the

Hercules Exploration, Inc.

200 Wilson Tower

Corpus Christi,

Texas 78401

In consideration of your extending said credit to the Hercules Exploration, Inc., the undersigned hereby unconditionally guarantees payment of whatever amount the said Hercules Exploration, Inc. shall at any time owe to the said Halliburton Company, its divisions and subsidiaries, on account of material and equipment hereafter furnished or sold, and services hereafter rendered, whether said indebtedness is in the form of notes, bills or open account."

\*    \*    \*    \*    \*    \*

Notice of indebtedness, notice of default in payment and notice of acceptance are hereby waived. It shall not be necessary for you to take proceedings against Hercules Exploration, Inc. before proceeding against the undersigned for payment of any sum, the payment of which is hereby guaranteed. Liability under this guaranty shall at no time exceed the sum of $50,000.00"

It is conclusively shown by the record that the goods and services furnished Hercules by Halliburton were furnished on August 20 and 24, 1976, respectively. There is no evidence that the guaranty was revoked by either Weaver or Myers prior to August 24, 1976, the date when the last of such goods and services were furnished. The document itself stated that it was an "open and continuing guaranty, subject only to the limitations hereinafter set forth." None of the limitations affect the provisions of the "Letter of Guaranty."

■■■ A "continuing guaranty" is a guaranty which contemplates a series of future transactions and remains in effect, according to its terms, until revoked. *Houston Furniture, Etc. v. Bank of Woodlake,* 562 S.W.2d 880, 884 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ); *Blount v. Westinghouse Credit Corp.,* 432 S.W.2d 549 (Tex.Civ.App.—Dallas 1968, no writ). The guarantor's liability is measured by the principal's liability. *Houston Furniture, Etc. v. Bank of Woodlake,* supra. In the case at bar, Hercules, the principal, was found liable by the jury and Weaver and Myers, the guarantors were found liable, individually, by the trial judge.

Hercules became indebted to Halliburton in an amount which was less than the $50,-000.00 ceiling set by Weaver and Myers. There are no ambiguities in the "Letter of Guaranty."

■■■ Special issues were not required to be submitted to the jury in regard to the liability of Weaver and Myers. The issue of liability of the guarantors became a question of law, to be resolved by the trial court and not by the jury. An issue should not be submitted to a jury if it involves the determination of a question of law. *Burgess v. Sylvester,* 143 Tex. 25, 182 S.W.2d 358 (1944); *Kirkman v. City of Amarillo,* 508

S.W.2d 933 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.). Since the determination of individual liability involved a question of law, there was no need to request or submit the issue to the jury. The tenth and eleventh points of error are overruled. The judgment of the trial court is AFFIRMED.