John M. ROBERTS, et al., Appellants,

v.

Stephen L. BURKETT, et al., Appellees.

No. 13–90–036–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 6, 1990.

William H. Kendall, Jr., Kleberg & Head, Corpus Christi, for appellants.

Tom Hermansen, Hunt, Hermansen, McKibben & Barger, Corpus Christi, for appellees.

Before NYE, C.J., and KEYS and DORSEY, JJ.

## OPINION

KEYS, Justice.

Appellants John Roberts and Louis Wells III appeal from a judgment in their favor against their attorneys, Stephen Burkett, Perry Burkett and the law firm of Burkett and Associates, Inc. The trial court found the attorneys were liable for legal malpractice, but not liable for fraud or violations of the Deceptive Trade Practices Act[1] (DTPA). Each appellant was found 20% negligent and the attorneys were found 60% negligent. By fourteen points of error appellants complain that they were not negligent, damages were not sufficient, and that the evidence established their D.T. P.A. claims. We affirm.

The claim for legal malpractice arose out of a $50,000.00 secured loan transaction involving Roberts, Wells, and Stephen Burkett (Burkett) as lenders, and Ragab Zatout, an Egyptian businessman, as borrower. The loan was secured by a second lien on undeveloped commercial real estate near I–37 in Corpus Christi. The first lien was approximately $200,000.00. The parties to the loan agreed that Burkett would loan 50% of the principal, and Roberts and Wells would loan 25% each. They also agreed that $13,568.13 would be added to the principal amount of $50,000.00, but not disbursed, so the lenders could make secured first lien payments if Zatout failed to pay.

The note was dated January 30, 1987, and the face amount was $63,538.16. The interest rate was stated as 13.5% on the principal amount. All sums were due 6 months from January 30, 1987.

---

1. Tex.Bus & Com.Code Ann. § 17.41–63 (Vernon 1989).

Burkett, his father, Perry Burkett, and their law firm acted as legal counsel for the lenders. Burkett agreed that he would handle the legal aspects of the transaction. Perry Burkett, who was skilled in handling this type of transaction, prepared the Deed of Trust, Note, and other documents. The attorneys were not paid for their services, and there was conflicting evidence concerning whether there was an agreement that they would be paid.[2]

First lien payments were not made on March 10, 1987. The evidence conflicts on what happened next. Burkett testified that Roberts insisted that the holders accelerate the note. He demanded that a letter be immediately sent to accomplish this. Roberts testified that sending the letter was Burkett's idea.

What happened next is also disputed. Burkett's testimony indicates that he advised Roberts not to send the letter for a number of reasons. First, Perry Burkett, who was knowledgeable in commercial law, and in fact handling the technical aspects of the transaction, was out of town. Second, the first lien payments were covered by the extra $13,000.00 included in the note to Zatout, thus Zatout was not in default. Third, Zatout had dealt honorably with the parties before, and Burkett wanted to give him a chance to work out his problems. Nevertheless, Roberts asked Burkett how to draft a collection letter, and in general terms, Burkett told him. Later in the day Roberts wrote the letter, signed it, and brought it by Burkett's office. After reading the letter, Burkett signed it. Wells signed after Burkett signed it. The letter purported to accelerate the note and notify Zatout that a power of sale would be exercised.

On May 5, 1987, a foreclosure sale was held and the parties foreclosed Zatout's interest. There were several problems with the sale that prevented it from legally transferring ownership, however, the parties thought they had purchased the property. Apparently realizing that there were some problems with this initial sale, Perry Burkett sent Zatout a letter on October 7, 1987, indicating that the property would be sold again. On October 22, Roberts, this time with Burkett's concurrence, wrote Zatout a second letter offering to sell their interest in the property back to him for $110,000.00 and $10,000 in legal fees. Wells also signed this letter.

On November 20, 1987, Zatout's counsel wrote the lenders a letter alleging wrongful foreclosure and, based on the October 22 letter, usury. During this period, appellees represented that the acceleration and foreclosure was not wrongful and there were no other problems with their legal position. The lenders continued to make the first lien payments to protect their position. Subsequently the parties to the loan transaction settled with Zatout. They agreed to cancel the debt, grant a quitclaim deed to Zatout, and Burkett agreed to pay Zatout $15,000.00. In return, Zatout agreed not to sue.

On May 10, 1988, appellants filed suit against appellees claiming negligence (attorney malpractice), fraud, and DTPA violations. After trial to the court, judgment was entered against appellees on the negligence claim. The court apportioned liability 20% each for Roberts and Wells, and 60% for appellees. The trial court found appellant Wells was damaged in the amount of $18,756.00 and appellant Roberts was damaged $14,480.00.

By appellants' first point of error, they complain that the trial court erred in finding appellant Wells 20% negligent because appellees' counsel judicially admitted Wells was not negligent in the closing argument. To qualify as a judicial admission, a statement must be 1) made in the course of a judicial proceeding; 2) contrary to an essential fact for the party's recovery; 3) deliberate, clear and unequivocal; 4) related to a fact upon which judgment for the opposing party could be based; and 5) enforcing the admission would be consistent with public policy. *Hercules Explo-*

---

**2.** Based on these facts, the trial court found that appellants were not consumers. *See* Tex.Bus. & Com.Code Ann. § 17.45(4).

*ration, Inc. v. Halliburton Co.*, 658 S.W.2d 716, 720 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

Appellee's counsel in closing argument stated:

Now, your honor, as far as a division of responsibility, we think—as I have mentioned to you—we think there is "client negligence" here—not on the part of Mr. Wells.

We don't think Mr. Wells had anything to do with the events that lead to this unfortunate conclusion. The only problem we have with Mr. Wells is when he gets on the stand and purports to tell the court that at the time of this March 10 letter, that Steve told him it was okay on a conference telephone call; and, then, when we show him his deposition testimony, that is not so. And he finally admits that that was not so; that, in fact, he had nothing to do with this.

So, other than that effort to help Mr. Roberts, we don't have any quarrel with Mr. Wells, and we believe Mr. Wells is free of any negligence in this situation.

Appellee argues that this statement was not deliberate, clear and unequivocal. We agree.

■ Statements of opinion are not judicial admissions. *Hedge v. Bryan*, 425 S.W.2d 866, 869 (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.). These statements qualify as opinion because of the way they are phrased. The statements do not unequivocally waive appellees' rights of action against Wells, thus they are not judicial admissions.

■ In addition, we note that these statements occurred in an argument and are unsworn. The policy underlying judicial admissions is to prevent a party from recovering after he has clearly and unequivocally sworn himself out of court. *United States Fidelity & Guar. Co. v. Carr*, 242 S.W.2d 224, 229 (Tex.Civ.App.—San Antonio 1951, writ ref'd). This did not occur here. Judicial admissions are a formal act, and the doctrine should be applied with caution. *Hercules Exploration*, 658 S.W.2d at 719; *Mobil Oil Co. v. Dodd*, 515 S.W.2d 351, 353 (Tex.Civ.App.—Corpus

Christi 1974, no writ). Because we find there was no judicial admission we overrule appellants' first point of error.

■ By appellants' second through fifth points of error they complain that the trial court erred in finding Wells and Roberts partially negligent. Due to the unique circumstances present in this case, this error, if any, is harmless. Tex.R.App.P. 81(b)(1).

The findings of fact filed by the trial court reflect that Wells and Roberts were each 20% negligent. The court also found that Wells was damaged in the amount of $18,756.00 and that Roberts was damaged in the amount of $14,480.00. The judgment awarded these damages to Wells and Roberts without reducing this figure by 20% as required by Tex.Civ.Prac. & Rem.Code Ann. § 33.012(a) (Vernon 1989). Appellants have been awarded the damages they would be entitled to if these points were sustained. Appellee does not challenge the judgment on the grounds that the trial court failed to reduce the damages by appellants' degree of comparative responsibility. Thus, they failed to preserve this challenge for our review. Tex.R.App.P. 52(a). We decline to address appellants' second through fifth points of error because the court's error, if any, in finding Wells and Roberts 20% negligent was harmless. Tex. R.App.P. 81(b)(1). Points of error two through five are overruled.

■ Appellant's sixth and seventh points of error challenge the trial court's finding that there was no equity in the property. Appellants' argue that they are entitled to a percentage of Zatout's equity in the property as a part of their measure of damages. We find this proposition untenable.

Burkett's negligence caused appellants to lose the benefits of their bargain with Zatout. In addition, they became liable for damages arising out of the usury laws. These damages included loss of their investment capital, loss of interest they could have made on the transaction, and the penalties associated with the usury. By arguing that they are entitled to a measure of Zatout's equity in the property, they are arguing that they should be placed in a

better position than they would have been but for Burkett's negligence. This runs contrary to the theory underlying compensatory damages. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 552 (Tex.1985); *Waldon v. Williams*, 760 S.W.2d 833, 834 (Tex.App.—Austin 1988, no writ). Moreover, there has been no showing that Burkett's negligence was a proximate cause of this injury to appellants as a matter of law. *See Clark v. McFerrin*, 760 S.W.2d 822, 827 (Tex.App.—Corpus Christi 1988, writ denied) (measure of damages in a negligence action are those proximately caused by the negligence).[3] Thus, we hold that appellants are not entitled to any portion of Zatout's equity as a part of their measure of damages in this case. Points of error six and seven are overruled.

■ We find another reason to overrule these points: appellants did not conclusively establish that Zatout owned any equity in the property. Appellees had the burden to prove damages. Thus, the proper challenge on appeal is that some equity was established as a "matter of law", or that the court's finding of no equity was "against the great weight and preponderance of the evidence". A two-pronged inquiry is required for a "matter of law" point. First, the appellate court must examine the record for some evidence supporting the finding of fact. Second, if there is no evidence supporting the finding, it must be determined from the record whether the contrary proposition is established as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). If a finding is "against the great weight and preponderance of the evidence" the inquiry is whether, after examining all the evidence, the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

In order to establish the amount of equity in the property, appellants had to prove the market value and the debt. Competent evidence established that the debt was

about $270,000.00. The remaining question is whether the market value exceeded this figure.

Regarding the first prong of the matter of law point, we find no evidence to support the trial court's finding that the market value was below $270,000.00. Market value is defined as "the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying." *State v. Carpenter*, 89 S.W.2d 979, 980 (Tex.Comm'n App.1936, opinion adopted). The evidence did show that Zatout allowed the property to be foreclosed on for $200,-000.00. This, however, is no evidence of market value because foreclosure sales involve unwilling sellers. Consequently we must consider the second aspect of the matter of law analysis.

The question under the second prong of the matter of law point is whether appellants conclusively proved that there was some equity in the property. Appellants fail in this respect.

The evidence upon which appellants rely to conclusively prove that the market value of the property was more than $270,000.00 is the testimony of one expert witness. He testified that he was familiar with land sales in Nueces County during 1987, and with the tract in question. In his opinion the market value during 1987 was between $850,000.00 and $900,000.00. He stated that the property was listed at around $1,000,000.00 and an $800,000.00 offer was made for the property during this period. No sale was made. No sale of comparable property was established. The expert also indicated that property values were dropping rapidly after 1985.

This offer to purchase did not conclusively establish the market value of the property because it is no evidence of market value. *Hanks v. Gulf, C. & S.F. Ry.*, 159 Tex. 311, 320 S.W.2d 333, 335–337 (1959);

---

**3.** In fact, Burkett's negligence in foreclosing on May 5, 1987, was not a proximate cause of injury to appellees because they had no right to foreclose at that time. Zatout was not in default until July 30, 1987, when the note became due. If Burkett had foreclosed on May 5, then the parties would have been liable to Zatout for wrongful foreclosure.

*Southwestern Bell Tel. v. Wilson,* 768 S.W.2d 755, 762 (Tex.App.—Corpus Christi 1988, writ denied).

■ The trial court as the finder of fact had the duty to assign weight and veracity to the witnesses testimony. *See Clark,* 760 S.W.2d at 827. The expert's testimony was weak and speculative because it appears he based his opinion of market value on the offers to sell or buy. He cited no sales of comparable property or any other proper basis for his opinion. In fact, he stated that property values were falling during this period, and there were few buyers in the market. Under these circumstances the trial court could have found the expert's testimony was not credible. We hold that this testimony did not establish as a matter of law that there was equity in the collateral. We also hold that the evidence of market value was insufficient for us to exercise our constitutional power to rule that the court's finding was against the great weight and preponderance of the evidence.[4]

■ By appellants' eighth and ninth points of error they complain of the trial court's finding that Wells and Roberts were not consumers. The trial court found and ruled that they were not consumers and therefore denied any recovery against appellees under the D.T.P.A.

■ A consumer is "an individual, [or] partnership, ... who seeks or acquires by purchase or lease, any goods or services." Tex.Bus. & Com.Code Ann. § 17.45 (Vernon 1989). Legal services are considered "services" within the meaning of the Act. *DeBakey v. Staggs,* 612 S.W.2d 924, 925 (Tex.1981). Consideration need not change hands for consumer status to arise. *McCrann v. Klaneckey,* 667 S.W.2d 924, 926 (Tex.App.—Corpus Christi 1984, no writ). Instead, the plaintiff's relationship to the transaction delineates consumer status. *Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361, 368 (Tex.1987). If an actual purchase or lease has not occurred, then the issue is whether the plain-

tiff intended to seek or acquire by purchase or lease the goods or services. *Martin v. Lou Poliquin Enter., Inc.,* 696 S.W.2d 180, 184–85 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *McCrann,* 667 S.W.2d at 926 (the transaction must contemplate a purchase or lease).

The key element missing here is actual purchase or an agreement that appellants would purchase legal services. The evidence showed the appellants' relationship to the transaction was principally one of creditor to Zatout. The legal work done by appellees was gratuitous, and incidental to the loan. The loan transaction did not involve a good or service and Zatout's purpose was only to borrow money; thus, consumer status cannot arise from that aspect of the transaction. *Compare La Sara Grain Co. v. First Nat'l Bank,* 673 S.W.2d 558, 566 (Tex.1984) (extension of credit does not involve a good or service) *with Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 541 (Tex.1981) (purchase of house from third party supported D.T.P.A. action against broker who did not supply goods or services).

Whether the parties agreed that legal services would be purchased was a disputed fact. Roberts testified that appellees requested compensation for their work. Steve Burkett's testimony indicated, however, that on many prior transactions Roberts, his friend, had sought and acquired his legal services for no charge. He also testified that there was no agreement to pay in the instant transaction. It is undisputed that appellants sought and acquired legal services but that no purchase actually occurred.

Appellants point to the letter of October 22, 1987, which offered to reconvey the property to Zatout for $110,000 and $10,000 in attorney's fees as evidence of an agreement to compensate appellees. This letter, however, is merely an offer to form an agreement between Zatout and Burkett for payment of attorneys' fees.

**4.** We are not holding that expert testimony cannot establish market value as a matter of law. Rather, our ruling is that this expert's testimony did not establish market value as a matter of law because it was apparently based on facts with no probative value on the relevant issue.

The evidence showed that the acquisition of legal services was gratuitous and incidental to the loan agreement. Because no agreement to purchase existed, we hold that appellees were not consumers. We overrule points eight and nine. We do not reach points ten through fourteen because standing as a consumer is a predicate to recovery under D.T.P.A.

Judgment of the trial court is AFFIRMED.