Lorenzo RANGEL, Appellant,

v.

HARTFORD ACCIDENT & INDEMNITY COMPANY, Appellee.

No. 05–90–00678–CV.

Court of Appeals of Texas, Dallas.

Aug. 13, 1991.

Rehearing Denied Sept. 27, 1991.

Ernesto Maldonado, Dallas, for appellant.

James H. Moody, III and Mark M. Donheiser, Dallas, for appellee.

## OPINION

ROWE, Justice.

Lorenzo Rangel appeals from a summary judgment in favor of Hartford Accident & Indemnity Company on his bad faith claim alleging damages for Hartford's delay in payment of workers' compensation benefits. In a sole point of error, Rangel contends the trial court erred in granting Hartford's motion. We disagree and affirm the summary judgment.

## STATEMENT OF FACTS

The summary judgment evidence reveals the following facts. While Rangel was employed by Hyatt Pre–Pak, Inc., he had a job-related accident on or about May 10, 1988. Hyatt Pre–Pak, Inc. carried its workers' compensation insurance with Hartford, and Hartford promptly began paying weekly benefits to Rangel. On October 29, 1988, however, Hartford stopped making weekly payments. After numerous fruitless efforts to have Hartford re-sume payments, Rangel's attorney requested and received a prehearing conference, which was held before the Texas Industrial Accident Board (IAB) on February 15, 1989. At that time, Hartford tendered a check in the amount of $2,166.18 for benefits owed from October 29, 1988, through February 10, 1989. Thereafter, Hartford continued making weekly payments until the claim was settled as indicated below.

Based on Hartford's delayed payment of compensation benefits, Rangel filed the present lack of good faith and fair dealing claim on June 29, 1989, while the work-related claim was pending before the IAB. The parties settled the compensation claim on October 12, 1989. Hartford agreed to pay $29,000 and also agreed that it would continue paying for all reasonable and necessary future hospital and medical expenses through October 9, 1992. In settling the compensation claim, the parties signed IAB Form 13 entitled "Compromise Settlement Agreement" (CSA) and forwarded it to the IAB with a request for its approval. This form contained the following relevant provisions:

> We have read, understood and agreed to all provisions of this agreement, including the provisions listed on the reverse side. We understand that this agreement is made voluntarily. This agreement incorporates by reference all provisions stated on the reverse side.

One of the provisions on the reverse side is "The liability of the carrier or the extent of the injury or illness is uncertain, indefinite, or incapable of being satisfactorily established." By order dated December 14, 1989, the IAB approved this settlement after expressly finding that "the liability of the carrier or the extent of the injuries is uncertain, indefinite, or incapable of being satisfactorily established."

Relying on the cited provisions of the CSA as an admission on the part of Rangel that the carrier's liability was uncertain and on the express finding to that effect in the IAB's order approving the CSA, Hartford moved for summary judgment on theories of collateral estoppel, equitable estoppel, and/or judicial admissions. A legal

brief, an affidavit, and a copy of the CSA with the IAB's approval accompanied Hartford's motion. Rangel filed his motion in opposition to the request for summary judgment together with his sworn statement and a legal brief. The trial court granted the motion for summary judgment and ordered that Rangel take nothing by this suit.

## STANDARD OF REVIEW

■ The function of a summary judgment is not to deprive a litigant of his right to a full hearing on the merits of any real issue of fact, but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). The standards for reviewing a motion for summary judgment are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

Although Hartford's motion is based on three affirmative defenses, Hartford can prevail by establishing conclusively every factual element of any one of these alleged defenses. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972).

## POINT OF ERROR

■ In his sole point of error, Rangel contends that the trial court erred in granting summary judgment against him on the claim which he pleaded against Hartford. Rangel's claim contained the elements of that cause of action approved in *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210 (Tex.1988). In *Aranda*, the court held that a carrier breaches a duty of good faith and fair dealing by refusing to pay or by delaying payment of any benefits where the workers' compensation claimant establishes (1) that the carrier lacked a reasonable basis for denying or delaying payment of the benefits of the policy and (2) that the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim. *Id.* at 215. As a matter of law, Hartford contends that as specially provided in *Aranda*, the questionable nature of its liability exempted it from Rangel's claim. *Id.* at 213. It relies upon collateral estoppel, equitable estoppel, and judicial admissions flowing from those recitations of uncertainty of liability contained in the CSA as approved by the IAB. Since the court's judgment does not specify the ground relied upon for its ruling, we must affirm it if any of the theories advanced by Hartford are meritorious. *Borg–Warner Acceptance Corp. v. C.I.T. Corp.*, 679 S.W.2d 140, 142 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.). We conclude that Hartford's defense based on the theory of collateral estoppel is meritorious.

## COLLATERAL ESTOPPEL

■ Collateral estoppel is a doctrine of issue preclusion, developed to prevent relitigation of issues already determined. The elements of collateral estoppel are:

1. the party against whom the doctrine was asserted was a party to the prior action or in privity with the party to the prior action;

2. the issue decided in the prior action was identical to the issue in the pending action;

3. the issue was actually litigated;

4. the opposing party had a full and fair opportunity to litigate the merits of the issue; and

5. the issue was finally determined on the merits and was necessary, essential, and material to the outcome of the prior action.

*Martin v. United States Trust Co.*, 690 S.W.2d 300, 308 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). The applicability of this doctrine to a particular judgment is a question of law. *Id.*

Hartford argues that either of the IAB's findings, uncertainty of liability of the carrier, or uncertainty of the extent of injury of the employee, establishes a reasonable basis for its delay in payment of weekly benefits and that Rangel is thus collaterally estopped from relitigating the issue of whether there was a reasonable basis for the delay in this suit. We agree. *See Torchia v. Aetna Casualty & Sur. Co.*, 804 S.W.2d 219, 223–24 (Tex.App.—El Paso 1991, writ denied); *Price v. Texas Employers' Ins. Ass'n*, 782 S.W.2d 938, 941 (Tex. App.—Tyler 1989, no writ); *Izaguirre v. Texas Employers' Ins. Ass'n*, 749 S.W.2d 550, 555 (Tex.App.—Corpus Christi 1988, writ denied).

■ We consider separately each of the above listed five elements essential for establishing Hartford's defense of collateral estoppel:

*First.* Both Rangel and Hartford were parties to the prior "action." The proceeding before the IAB is considered a judicial proceeding and is subject to the doctrine of collateral estoppel. *See Washburn v. Associated Indem. Corp.*, 721 S.W.2d 928, 932–933, (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *see also Price v. Texas Employers' Ins. Ass'n*, 782 S.W.2d at 940.

*Second.* The issue sought to be precluded is the same as that decided before the IAB. By a finding in its order, the IAB expressly confirmed the parties' understanding documented in the CSA that "the liability of the carrier or the extent of the injury of the employee is uncertain, indefinite, or incapable of being satisfactorily established." For purposes of issue preclusion, we attribute no significance to the disjunctive aspect of this finding. The carrier's liability is an obligation to pay benefits measured by the workers' compensation law. Under that law, the carrier's obligation is measured not only by the extent of the employee's injury but also by other factors such as the compensability of that injury. Whether a carrier's liability is *generally* found to be uncertain or its liability with respect to a particular factor is *specially* found to be uncertain, the consequence is the same. The questionable nature of its liability provides as a matter of law a reasonable basis for the carrier's withholding of payments, and the injured employee is thus precluded from successfully establishing an *Aranda* claim. *Aranda*, 748 S.W.2d at 213; *Izaguirre*, 749 S.W.2d at 555.

*Third.* The fact that the issue of uncertainty was first agreed to by the parties and then confirmed by the IAB does not contravene the requirement that the issue be actually litigated. Agreed judgments are entitled to the same procedural effect as those determined after a contested trial. *Heights Funeral Home v. McClain*, 288 S.W.2d 839, 844 (Tex. Civ.App.—Beaumont 1956, writ ref'd n.r.e.).

*Fourth.* Rangel does not dispute that he voluntarily entered into the CSA, so he cannot now claim that he had no opportunity to litigate the issue on the merits. Indeed, he makes no contest of this essential element.

*Fifth.* The finding of uncertainty was necessary and material to the outcome of the proceeding before the IAB. Under article 8307, section 12, of the Texas Revised Civil Statutes, a finding of uncertainty is a precondition to the Board's authority to consider and approve a compromise settlement. *See Starnes v. Texas Employers' Ins. Ass'n*, 549 S.W.2d 46, 47 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.).

From the above analysis, we determine that Hartford's summary judgment evidence proved beyond dispute every factual element essential to its defense of collateral estoppel. Thus, the trial court properly denied the relief sought by Rangel.

We affirm the trial court's summary judgment in favor of Hartford.

ENOCH, C.J., and WHITHAM, LAGARDE, KINKEADE, OVARD, BURNETT and WHITTINGTON, JJ., join in the majority.

BAKER, THOMAS, MALONEY and CHAPMAN, JJ. join in STEWART, J., dissent.

STEWART, Justice, dissenting.

I respectfully dissent. The majority holds that an agreement or finding of uncertainty either of carrier liability or extent of the claimant's injury produces the same consequence, namely, that the carrier's liability is questionable, which in turn provides as a matter of law a reasonable basis for the carrier's withholding of payments. Thus, it attaches no significance to the disjunctive nature of the statement contained in the CSA and the IAB's order approving the parties' settlement agreement. I, on the other hand, would conclude that, when each finding is considered alone, the two have different legal effects and, therefore, the disjunctive nature of the language at issue is of controlling significance in determining whether Hartford has established any of its three affirmative defenses as a matter of law.

The disjunctive language involved here comes directly from the Workers' Compensation Act, which requires the IAB to make one of the two findings at issue before it can approve a compromise settlement agreement. Tex.Rev.Civ.Stat.Ann. art. 8307, § 12 (Vernon 1967).[1] Thus, we should construe the legal effect of the language in the context of the Act itself. A carrier's "liability" under the Act arises upon the claimant's proof that he has suffered a work-related injury; at that point the carrier is required to pay compensation benefits. *Aranda v. Ins. Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex.1988). Accordingly, I would agree that an agreement or finding only that liability is uncertain renders the entire claim questionable and would provide as a matter of law a reasonable basis for delay of payment or denial of a claim. *Izaguirre v. Texas Employers' Ins. Ass'n,* 749 S.W.2d 550, 555 (Tex.App.—Corpus Christi 1988, writ denied). On the other hand, I would conclude that an agreement or finding that the extent of injury is uncertain, standing alone, does not admit that liability under the Act is uncertain or that the claim is questionable; it impliedly acknowledges general liability and only ad-

mits that the amount of benefits due the claimant is uncertain. Hence, for the following reasons, I would further conclude that the parties' failure to indicate which of the two alternatives they were relying on defeats Hartford's affirmative defenses to Rangel's bad-faith claim.

### A. Collateral Estoppel

The majority holds that Rangel is collaterally estopped from relitigating the issue of whether there was a reasonable basis for delay in this suit because either of the IAB's findings establishes as a matter of law a reasonable basis for the delay in payments. It relies on the *Torchia, Price* and *Izaguirre* cases. However, all three cases are distinguishable on their facts.

In *Torchia,* the plaintiff claiming bad faith had previously agreed that liability of the carrier was uncertain and that his settlement was fair; he also had signed a release, not only of his compensation claim, but also of any claims he might have had then, or in the future, against the carrier. *Torchia v. Aetna Casualty & Sur. Co.,* 804 S.W.2d 219, 221 (Tex.App.—El Paso 1991, writ denied). In *Price,* the trial court found both liability of the carrier and extent of injury indefinite and uncertain, and the appellate court relied only on uncertainty of liability for its holding that Price was collaterally estopped from asserting a bad-faith claim. *Price v. Texas Employers' Ins. Ass'n,* 782 S.W.2d 938, 940–41 (Tex. App.—Tyler 1989, no writ) (per curiam). In *Izaguirre,* Solis and Guerrero signed releases which were filed in the district court and which contained a statement agreeing that the liability of the carrier "is indefinite, uncertain and incapable of being satisfactorily established." *Izaguirre,* 749 S.W.2d at 555.

None of these cases are based on alternative findings or on a finding of uncertainty of the extent of the employee's injury. Based on the authority cited by the majority and for the reasons stated at the outset

---

1. This article was repealed by Act of Dec. 11, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(10), 1989 Tex.Gen.Laws 1, 114 (effective Jan. 1, 1991)

(now codified at Tex.Rev.Civ.Stat.Ann. art. 8308–4.33 (Vernon 1991)).

of this opinion, I would hold that only a finding of uncertainty of liability precludes a bad-faith claim, even though either of these findings supported the CSA before the IAB. We cannot say that the IAB found the carrier's liability uncertain, because it did not designate on which of the two findings it was relying. Further, since either of the findings standing independently would be sufficient to support the IAB's approval of the CSA, the IAB order is not conclusive with respect to either finding standing alone. *Eagle Properties, Ltd. v. Clarence Scharbauer, Jr.,* 807 S.W.2d 714, 722 (1991) (op. on reh'g) (quoting THE RESTATEMENT (SECOND) of JUDGMENTS, § 27, comment i (1982)); TEX.REV.CIV.STAT.ANN. art. 8307, § 12 (Vernon 1967). Consequently, I would hold that Hartford did not meet its burden to establish that the issue decided ·in the prior action was identical to the issue in the pending action and that the trial court erred if it granted summary judgment on the ground that collateral estoppel barred Rangel's bad-faith claim. Because I would conclude that collateral estoppel is not a proper ground for summary judgment, I would review Hartford's remaining grounds, the affirmative defenses of judicial admissions and equitable estoppel, to determine whether either of these grounds would support the trial court's judgment.

### B. Judicial Admissions

A judicial admission is a formal act, done in the course of judicial proceedings, which dispenses with the production of evidence and takes the matter out of the domain of proof. It is not evidence but is a substitute for evidence. *Hercules Exploration, Inc. v. Halliburton Co.,* 658 S.W.2d 716, 719 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). The five requirements of a judicial admission are that the admission was: (1) made in the course of a judicial proceeding; (2) contrary to an essential fact for the party's recovery; (3) deliberate, clear, and unequivocal; (4) related to a fact upon which judgment for the opposing party could be based; and (5) enforcing the admission would be consistent with public policy. *Id.* at 720 (quoting *United States*

*Fidelity & Guar. Co. v. Carr,* 242 S.W.2d 224 (Tex.Civ.App.—San Antonio 1951, writ ref'd)). Unless the statement asserted to be a judicial admission meets all of these requirements, it is not a judicial admission. *Hercules,* 658 S.W.2d at 720.

Hartford relies on *Izaguirre,* 749 S.W.2d at 555. In that case, two of the claimants had signed and filed releases in the district court in previous proceedings between the same parties. The releases contained the statement that each agreed that the carrier's liability was indefinite, uncertain, and incapable of being satisfactorily established. The court upheld summary judgment against these two claimants on their subsequent "bad faith" claims based on this admission. Hartford also relies on *Price,* 782 S.W.2d at 942, where the court held that, by signing a release in a prior proceeding containing the statement that the settlement was the result of a bona fide disputed claim, Price so stipulated and that this stipulation constituted a judicial admission that her claim was disputed in good faith.

Both of these cases are distinguishable on their facts with regard to the third requirement set out above. In both, the statements relied on by the respective courts as judicial admissions were deliberate, clear, and unequivocal; the statements were not in the alternative. Hartford contends that Rangel necessarily admitted one of the two alternatives because, otherwise, the IAB could not legally have approved the settlement agreement; that admission of either uncertainty provided a reasonable basis as a matter of law for delaying payment of benefits; and that, therefore, either alone is sufficient to sustain its summary judgment. This contention presupposes that one of the alternatives is an "admission." Alternative statements are not deliberate, clear, and unequivocal when viewed independently. ·Consequently, neither standing alone is a judicial admission. *Hercules,* 658 S.W.2d at 720. I would hold that Rangel's breach of good faith claim was not barred on the ground that he made judicial admissions in the prior suit.

## C. Equitable Estoppel

To establish equitable estoppel, Hartford had to prove that Rangel had taken a prior inconsistent judicial position and that Hartford (1) relied on the asserted inconsistency and (2) suffered injury as a result of that reliance. *Washburn v. Associated Indem. Corp.*, 721 S.W.2d 928, 932 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). The doctrine applies to prior proceedings before the IAB. *Id.* at 933. Thus, where a party takes one position in a judicial proceeding, he cannot later take a plainly inconsistent position in another proceeding. *Moore v. Means*, 549 S.W.2d 417, 419 (Tex.Civ. App.—Beaumont 1977, writ ref'd n.r.e.). However, equitable estoppel based on inconsistency in judicial proceedings also depends on the presence or absence of elements essential to equitable estoppel generally. 31 C.J.S. *Estoppel* § 117 at 618 (1964); *A. & M. College v. Guinn*, 280 S.W.2d 373, 377 (Tex.Civ.App.—Austin 1955, writ ref'd n.r.e.). Thus,

> there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.

*Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 932 (1952) (quoting 31 C.J.S. *Estoppel* § 67 at 402 (1964)).

Hartford relies on Tannya L. Ritter's affidavit and states in its brief that she testified that Hartford would not have paid the agreed settlement amount of $29,000 without the execution of the CSA with the "uncertainty" language. It maintains that this evidence established all three elements of equitable estoppel. The exact language of the Ritter affidavit states:

> Relying on the representations made by Mr. Rangel and his counsel in the CSA and the Industrial Accident Board's subsequent findings regarding Hartford's liability (or the extent of Mr. Rangel's injuries) being uncertain, indefinite or incapable of being satisfactorily established, Hartford paid Mr. Rangel the sums specified in the CSA. But for Mr. Rangel's execution of the CSA and/or some similar release or settlement agreement, Hartford would not have paid Mr. Rangel the lump sum settlement provided for by the terms of the CSA.

Hartford contends that Ritter's failure to specify which representation, uncertainty of liability or uncertainty of extent of injury, was relied on by Hartford does not matter, and it is the fact of the inconsistent position, including the disjunctive, which caused the harm.

I would disagree that under the facts of this case Hartford has conclusively proved that Rangel took a position in the prior proceeding that is plainly inconsistent with his position in the case at bar. As stated above, Rangel's alternative agreement that liability was uncertain was equivocal; the CSA can be construed as Rangel's agreement or representation that only the extent of his injuries was uncertain and that he made no representation that Hartford's liability was uncertain. Thus, Hartford cannot contend that Rangel took a position before the IAB that liability was uncertain.

To the extent that Rangel may be deemed to have taken the position before the IAB that the extent of his injury was uncertain, I would conclude that this position is not necessarily inconsistent with his position in this case that Hartford had no reasonable basis for delaying payment of weekly benefits. The extent of injury only affects the amount of compensation due a claimant. Thus, the position that the extent of injury is uncertain only concedes that the total number of weekly payments to be made is uncertain. It does not concede that the delay in payments at any given point in time is reasonable, because that would depend on the nature of the injury and the point in time when the delay in payments occurred. Hence, this position would not be controlling on the question of breach of the duty of good faith and fair dealing, although it could be evidence of a reasonable basis for delay in payment in

certain circumstances. *See Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex.1990). I would hold that Rangel's position in this case is not plainly inconsistent with his position in the prior proceeding. *Moore*, 549 S.W.2d at 419.

Moreover, there has been no concealment or misrepresentation of material facts in this case. All facts were known to both parties. *A. & M. College*, 280 S.W.2d at 377 (op. on reh'g). There can be no estoppel where both parties are equally in possession of all the facts pertaining to the matter relied on as an estoppel. *Blackburn v. Blackburn*, 163 S.W.2d 251, 256 (Tex.Civ.App.—Amarillo 1942, no writ). Finally, there is no summary judgment evidence that Hartford relied on the provisions in the CSA or on the IAB's findings to prevent a bad faith suit. *Nat'l Union Fire Ins. Co. v. Dominguez*, 793 S.W.2d 66, 72 (Tex.App.—El Paso 1990, writ denied). To the contrary, we have Rangel's sworn statement that the following took place after Hartford resumed weekly payments on February 15, 1989:

> Thereafter we decided to settle the worker's [sic] compensation claim on October 12, 1989, but at no time discussed settlement or disposition of the present action which the defendant knew was pending before this Honorable Court since June 29, 1989.
>
> I would like to make clear that I did not, at any time, consider settling the lack of good faith and fair dealing claim that I have pending against the defendant before this Court, nor was the matter touched upon at the Texas Industrial Accident Board.

In addition, it is clear from the record that Hartford could not have relied on Rangel's agreement to the provisions in the CSA or the IAB's findings as a reasonable basis to delay payment of the weekly benefits since the parties agreed to settle almost a year after the occurrence of the events on which the present breach of good faith claim is based. Whether there is a reasonable basis for denial, or delay in payment, of a claim must be judged by the facts before the insurer at the time the claim was denied or payment delayed. *Viles*, 788 S.W.2d at 567. For all of the above reasons, I would hold that Rangel was not equitably estopped as a matter of law from litigating his claim for breach of the duty of good faith and fair dealing in the processing of his claim for workers' compensation.

In summary, I would hold that Hartford has failed to establish as a matter of law any of its affirmative defenses to Rangel's cause of action in this case. Therefore, I would sustain Rangel's sole point of error, reverse the judgment of the trial court, and remand this cause for further proceedings in accordance with this opinion.

BAKER, THOMAS, MALONEY and CHAPMAN, JJ., join in dissenting opinion.